32 A.3d 1213

Frank D. HELLER and Beverly A. Heller,
Husband and Wife, Appellants

v.

PENNSYLVANIA LEAGUE OF CITIES AND MUNICIPAL-
ITIES t/d/b/a Penn PRIME Trust a/k/a Pennsylvania Pooled
Risk Insurance for Municipal Entities, Appellees.

Supreme Court of Pennsylvania.

Argued April 13, 2010.

Decided Oct. 19, 2011.

144

Joseph J. Liotta, III, Franklin, Scott B. Cooper, Schmidt, Ronca & Kramer, PC, Harrisburg, for Frank D. Heller and Beverly A. Heller.

Frank P. Murphy, Murphy Woodward & Haskins, Norristown, for Appellant Amicus Curiae, Pennsylvania Association for Justice.

Brian P. Gabriel, Campbell Durrant Beatty Palombo & Miller, P.C., Pittsburgh, for PA League of Cities & Municipalities, et al.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN JJ.

## *OPINION*

Justice ORIE MELVIN.

We granted review to determine whether it is a violation of public policy to exclude from underinsured motorist ("UIM") coverage a claim by an individual eligible for workers' compensation benefits. For the following reasons, we conclude that a workers' compensation exclusion in an employer-sponsored insurance policy violates public policy and is, therefore, unenforceable. Accordingly, we reverse the order of the Commonwealth Court.

The facts pertinent to our review are undisputed. On October 31, 2002, Appellant, Frank Heller ("Heller")[1], was severely injured in an automobile accident during the course of his employment as a police officer for Sugarcreek Borough ("Borough"). Workers' compensation covered Heller's medical expenses and two-thirds of his salary.[2] The Borough paid Heller the remainder of his salary.

Heller recovered the $25,000 policy limit from the tortfeasor's insurance carrier, Allstate Insurance Company. Heller's losses and damages, however, far exceeded the liability cover-

1. Heller's wife, Beverly Heller, is also named as a party in this case.
2. The Borough has workers' compensation coverage through the State Workers' Insurance Fund ("SWIF").

age.[3]  Accordingly, Heller notified his insurer of a potential
UIM claim and sought UIM benefits from the Borough pursu-
ant to a policy issued by Appellee, Pennsylvania League of
Cities and Municipalities t/d/b/a Pennsylvania Pooled Risk
Insurance for Municipal Entities a/k/a Penn PRIME Trust
("Penn PRIME").[4]  The Borough's policy provided UIM cov-
erage up to $100,000 per person or per accident.  Penn
PRIME denied Heller's claim pursuant to a policy exclusion
which states that UIM coverage does not apply to "[a]ny claim
by anyone eligible for workers['] compensation benefits that
are the statutory obligation of the Member." Liability Cover-
age Document, at 32.

Following Penn PRIME's denial of benefits, Heller filed a
declaratory judgment action in the Court of Common Pleas of
Venango County.  Heller sought an order voiding the subject
exclusion on the grounds that it is contrary to public policy.
The parties stipulated to the relevant facts and cross-motioned
for summary judgment.

On September 7, 2007, the trial court granted Heller's
motion for summary judgment and denied Penn PRIME's
motion for summary judgment. The court initially assessed the
ability of an injured employee to collect workers' compensation
and UIM benefits.  The trial court recognized that a repealed
section of the Motor Vehicle Financial Responsibility Law
("MVFRL"), 75 Pa.C.S. § 1735, prohibited an insurer from
excluding UIM benefits based on the receipt of workers'
compensation.[5]  The court observed that after the repeal of

3. We note that the nature and severity of Heller's injuries are not
documented in the record.  The complaint for declaratory judgment
states only that he sustained "severe and disabling injuries." Com-
plaint for Declaratory Judgment, 3/8/05, at ¶ 4. Thus, we are unable to
discern the precise nature of the additional recovery Heller seeks under
the Borough's policy.

4. Pursuant to 75 Pa.C.S. § 1733(a)(1), Penn PRIME's policy is the UIM
policy of first priority because it is the "policy covering [the] motor
vehicle occupied by the injured person at the time of the accident."

5. Section 1735 provided:

The coverage required by this subchapter [uninsured and underin-
sured motorist coverage] shall not be made subject to an exclusion or

section 1735,[6] an employee injured during the course and scope of his employment could still seek workers' compensation and UIM benefits. *Gardner v. Erie Insurance Company*, 555 Pa. 59, 722 A.2d 1041, 1046–47 (1999). Citing our decision in *Selected Risks Insurance Company v. Thompson*, 520 Pa. 130, 552 A.2d 1382 (1989), the trial court reasoned that prior to the adoption of section 1735, an exclusion based on the receipt of workers' compensation was void as against public policy. The court noted that such an exclusion violated public policy by, *inter alia*, creating a windfall for the insurer because it collected a separate premium for the UIM coverage. The trial court further concluded that the exclusion frustrated the objectives of the current MVFRL by denying the workers' compensation carrier the right of subrogation. *Harper v. Providence Washington Insurance Co.*, 753 A.2d 282, 286 (Pa.Super.2000). Accordingly, the trial court found that the exclusion violated public policy.

On appeal to the Commonwealth Court, a divided panel reversed the decision of the trial court. *Heller v. Pennsylvania League of Cities and Municipalities*, 950 A.2d 362 (Pa. Cmwlth.2008). The court began its analysis with a historical discussion of the interplay between the MVFRL and the Pennsylvania Workers' Compensation Act, 77 P.S. §§ 1–2626. The Commonwealth Court explained that 75 Pa.C.S. § 1735 prohibited insurance companies from excluding UIM benefits based on the receipt of workers' compensation. The court derived this premise from our decision in *Selected Risks, supra*, where we voided an exclusionary provision in an insur-

> reduction in amount because of any workers' compensation benefits payable as the result of the same injury.
>
> 75 Pa.C.S. § 1735 (repealed). Section 1737 of the MVFRL also concerned the interrelation of uninsured ("UM") and UIM benefits to workers' compensation, providing:
>
> Nothwithstanding anything contained in the ... Workmen's Compensation Act, no employee who is otherwise eligible shall be precluded from recovery of uninsured and underinsured motorist benefits from an employer's motor vehicle policy under this chapter....
>
> 75 Pa.C.S. § 1737 (repealed).

6. The General Assembly repealed sections 1735 and 1737 by the Act of July 2, 1993, P.L. 190, also known as Act 44. Hereinafter, we refer to Act 44 or the amendments to the MVFRL.

ance policy that permitted a reduction in UIM benefits in an amount equivalent to workers' compensation benefits.

The Commonwealth Court reviewed our case law regarding the interrelation of UIM and workers' compensation after the repeal of section 1735. The court observed that in *Gardner*, *supra*, we held that Act 44's repeal of section 1735 was not a revocation of the right to dual recovery. The Commonwealth Court explained that under the post-repeal law, workers' compensation benefits are no longer deducted from UIM benefits, but a workers' compensation carrier is allowed to seek subrogation.[7]

The court also discussed our decision in *Pennsylvania National Mutual Casualty Co. v. Black*, 591 Pa. 221, 916 A.2d 569 (2007), where we reviewed a set-off provision allowing for a reduced recovery under the UIM portion of an insurance policy when the insured recovered under the liability portion of the same policy. We concluded that the set-off did not violate public policy because it did not conflict with the MVFRL and was simply a cap on total coverage, consistent with the premiums paid by the insureds.[8] *Id.* at 580–81.

Within this framework, the Commonwealth Court evaluated the public policy at issue. Consistent with our precedent, the

---

7.  Act 44 concurrently repealed sections 1722 and 1720, as they pertain to workers' compensation. Section 1722 provided, in pertinent part:

> In any action for damages against a tortfeasor, or in any uninsured or underinsured motorist proceeding, arising out of the maintenance or use of a motor vehicle, a person who is eligible to receive benefits under the coverages set forth in this subchapter, or workers' compensation ... shall be precluded from recovering the amount of benefits paid or payable under this subchapter, or workers' compensation....

75 Pa.C.S. § 1722 (repealed in part).

Section 1720 provided, as relevant herein, "[i]n actions arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits...." 75 Pa.C.S. § 1720 (repealed in part). Section 25(b) of Act 44 repealed sections 1722 and 1720 as they relate to workers' compensation payments or other benefits under the Workers' Compensation Act.

8.  The Commonwealth Court also observed that the Third Circuit Court of Appeals has held that not all provisions prohibiting dual recovery are invalid. *Heller*, 950 A.2d at 368–69 (discussing *Nationwide Mutual Insurance Co. v. Cosenza*, 258 F.3d 197 (3rd Cir.2001)).

court stated that it must consider whether the MVFRL or the Workers' Compensation Act contains provisions that "specifically prohibit the inclusion of an exclusion to UIM coverage based upon the receipt of workers' compensation benefits, and if not, whether legal precedent warrants a conclusion that the exclusion violates public policy." *Heller*, 950 A.2d at 370. The Commonwealth Court found that the exclusion is not prohibited by any specific statutory provisions and determined that there is no case law directly on point.[9] Concluding that the courts should not act as a "super-legislature" and re-draft contract documents, the Commonwealth Court held that the conflicting policy considerations favored the insurer. Accordingly, the court found that the subject exclusion did not violate public policy.

Judge Friedman authored a dissenting opinion wherein she explained that the compensatory scheme established by Act 44 shifts the ultimate burden for benefits from the employer and the workers' compensation carrier to the tortfeasor and the insurance carrier. She opined that the employee is entitled to seek UIM benefits because workers' compensation does not cover damages for, *inter alia,* pain and suffering. *Selected Risks,* 552 A.2d at 1388. Judge Friedman stated, "[I]f a UIM carrier excludes from its UIM coverage anyone who is eligible for [workers' compensation] benefits, a [workers' compensation] carrier cannot assert a subrogation interest against UIM payments and an employee cannot recover all applicable damages." *Heller,* 950 A.2d at 373. Thus, she reasoned that Penn PRIME's exclusion defeats the two-pronged public policy of: (1) shifting the burden to UIM carriers where a third-party tortfeasor causes a work-related injury; and (2) enabling the injured employee to recover for losses and damages not covered by workers' compensation.

9. The court reasoned that the instant matter is distinguishable from *Gardner, supra,* because it concerns a specific provision in an insurance policy whereas *Gardner* concerned the exclusivity provisions of the Workers' Compensation Act. *See* 77 P.S. § 481(a). The Commonwealth Court further stated that *Selected Risks, supra,* is of limited precedential value because the case was decided prior to the amendments to the MVFRL.

Heller filed a petition for allowance of appeal with this Court, which we granted limited to the following issue:

Whether or not this Court should strike down an exclusion in Appellee's policy providing that any person receiving workers' compensation benefits was ineligible for UM/UIM benefits?

Heller argues that the policy exclusion in question violates the MVFRL. Since the MVFRL requires that an insurer provide UM/UIM coverage unless rejected, Heller avers that a workers' compensation exclusion is an impermissible way of denying coverage that is statutorily required. *Kmonk–Sullivan v. State Farm Mutual Auto. Insurance Co.*, 567 Pa. 514, 788 A.2d 955 (2001); *Prudential Property and Casualty Insurance Co. v. Colbert*, 572 Pa. 82, 813 A.2d 747 (2002). Accordingly, Heller maintains that allowing the exclusion to stand frustrates the legislative scheme underlying the MVFRL.

Heller also posits that while we have often discussed public policy concerns, the term remains undefined. Nonetheless, he claims that there is a clear violation of public policy where a policyholder pays a premium for illusory coverage. Heller contends that "virtually all" UIM claims will be made by Borough employees eligible for workers' compensation, leaving a "shallow pool" of individuals to whom coverage will apply.[10] Thus, Heller maintains that Penn PRIME received a windfall by charging a premium for illusory coverage.[11]

Heller also argues that the Commonwealth Court failed to consider the "made whole" doctrine.[12] Heller observes that

10. Heller asserts that the only individuals covered under Penn PRIME's policy are alleged or convicted criminals being transported in police vehicles.

11. Heller notes that the Borough could have achieved an identical result by rejecting Penn PRIME's UIM coverage, thereby saving the Borough the premium payments.

12. Under the "made whole" doctrine, an insured must recover the full amount of his losses before his insurer may demand reimbursement for any payments previously made to the insured under an insurance policy. *Jones v. Nationwide Property and Casualty Insurance Co.*, 995 A.2d 1233, 1238 n. 6 (Pa.Super.2010).

the Workers' Compensation Act limits the benefits available to an injured worker, covering medical expenses and two-thirds of the worker's average weekly wage. Since workers' compensation provides only a partial benefit, Heller maintains that the recovery of UIM benefits is essential for him to be made whole.[13] According to Heller, it is the insurer's burden to pay the benefits necessary to compensate him for his injuries. In support of this position, Heller broadly reiterates the concerns expressed in Judge Friedman's dissent, asserting that Act 44 shifts the burden to pay from the workers' compensation carrier to the insurer. Heller contends that allowing the exclusion to stand defeats the purpose of the amendments to the MVFRL.

The Pennsylvania Association for Justice [14] ("PAJ") filed an *amicus curiae* brief in support of Heller's position. PAJ argues that it is a violation of public policy to exclude from UIM coverage a claim by anyone eligible for workers' compensation benefits arising out of the same injury. PAJ asserts that the exclusion is an impermissible method of circumventing that which the law requires. PAJ draws on the statutory evolution of the MVFRL, noting that it reflects a clear legislative intent to allow subrogation and to shift the burden away from workers' compensation carriers. PAJ echoes Heller's argument regarding illusory coverage, claiming that Penn PRIME sold the Borough coverage "with little or no chance of any of the intended users, the employees, being able to access the coverage by virtue of an exclusion. . . ." Brief of Amicus at 6. PAJ observes that if the Borough did not wish for its employees to have coverage, it could have rejected the coverage outright and avoided paying the premiums. PAJ maintains that any suggestion that Borough employees are still covered by the policy is "divorced from reality." Brief of Amicus at 11.

---

**13.** Heller further claims that the exclusion prevents the workers' compensation carrier from being made whole. He hypothesizes numerous ripple effects from this scenario, including an increase in workers' compensation premiums.

**14.** Formerly known as the Pennsylvania Trial Lawyers Association.

By contrast, Penn PRIME contends that the Commonwealth Court correctly found that the subject exclusion is valid and enforceable. Initially, Penn PRIME avers that when this Court has declared policy language void as against public policy, the relevant provision has conflicted with specific language in the MVFRL. Penn PRIME argues that the workers' compensation exclusion does not conflict with any language in the MVFRL. Instead, it maintains that the exclusion supports the "dominant" policy underlying the MVFRL—cost containment. Penn PRIME asserts that the purpose of UIM coverage, to protect innocent victims, has not been elevated to a "dominant" public policy. In this vein, Penn PRIME observes that the MVFRL obligates the offer of UM/UIM coverage in every policy but allows insureds to reject the coverage. 75 Pa.C.S. § 1731(a).[15] Penn PRIME argues, "In light of the express public policy allowing an insured not to provide UIM coverage, a provision for such coverage subject to an exception for employees who receive workers' compensation comports with public policy."[16] Brief of Appellee at 8. Thus, it is Penn PRIME's position that it is logically impossible to convert the legislature's decision to make UIM benefits optional into a public policy mandate.

In rejecting Heller's argument that the Borough paid for illusory coverage, Penn PRIME observes that the Borough voluntarily entered into a coverage agreement containing a workers' compensation exclusion. Penn PRIME argues that the Borough bought coverage only for employees who are not

15. Specifically, 75 Pa.C.S. § 1731(a), provides:

(a) Mandatory offering.—No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage). Purchase of uninsured motorist and underinsured motorist coverages is optional.

Prior to July 1, 1990, such coverage was mandatory. *Id.*, Historical and Statutory Notes.

16. We note that the subject exclusion is based on eligibility for workers' compensation, not the actual receipt of benefits.

receiving workers' compensation benefits. As such, Penn PRIME contends that there is no merit to the allegation that the Borough did not receive the benefit of the contractually agreed upon coverage. According to Penn PRIME, to require it to provide benefits to Heller would force it to pay for a risk for which it received no compensation.

Penn PRIME also rejects Heller's contention that the denial of benefits prevents him from being made whole. Penn PRIME notes that Heller continues to receive his full salary from the Borough, has received payment under the tortfeasor's liability policy, and can recover benefits from his personal automobile insurance policy.[17] Penn PRIME further observes that any UIM benefits recovered by Heller would be subsumed by the subrogation interest of the Borough's workers' compensation carrier, SWIF. Thus, Penn PRIME maintains that Heller cannot legitimately assert that he will not be made whole.

■ In the instant case, we must determine whether the workers' compensation exclusion violates public policy. Accordingly, we are presented with a question of law for which our scope of review is plenary and our standard of review is *de novo*. *Generette v. Donegal Mutual Insurance Co.*, 598 Pa. 505, 957 A.2d 1180, 1189 (2008).

■ "Generally, courts must give plain meaning to a clear and unambiguous contract provision unless to do so would be contrary to a clearly expressed public policy." *Prudential Property and Casualty Insurance Co. v. Colbert*, 572 Pa. 82, 813 A.2d 747, 750 (2002). In several recent cases, this Court has examined claims that unambiguous provisions in automobile insurance policies are unenforceable because they violate public policies expressed in or underlying the MVFRL. In

17. In addition to granting review in the instant case, we also granted allowance of appeal in *Williams v. GEICO Gov't Employees Ins. Co.*, 613 Pa. 113, 32 A.3d 1195 (Pa.2011), to determine whether the "regular use" exclusion `in a police officer's personal automobile insurance policy violates public policy where the officer is injured during the course and scope of his employment. Our decision in *Williams*, also issued contemporaneously and discussed *infra*, guides our holding in the instant case.

response, we have affirmed our reticence to throw aside clear contractual language based on "the often formless face of public policy." *Colbert*, 813 A.2d at 752. With regard to the concept of public policy, we have stated:

Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. As the term "public policy" is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy.... Only dominant public policy would justify such action. In the absence of a plain indication of that policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, the Court should not assume to declare contracts ... contrary to public policy. The courts must be content to await legislative action.

*Burstein v. Prudential Property and Casualty Insurance Co.*, 570 Pa. 177, 809 A.2d 204, 207 (2002) (quoting *Eichelman v. Nationwide Insurance Co.*, 551 Pa. 558, 711 A.2d 1006, 1008 (1998)). This Court has further elaborated:

It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring [that the contract is against public policy].

*Mamlin v. Genoe*, 340 Pa. 320, 17 A.2d 407, 409 (1941).

Heller does not argue that the workers' compensation exclusion in Penn PRIME's policy is ambiguous, and he does not dispute that the exclusion bars his recovery of UIM benefits. Instead, he argues that the exclusion is contrary to public policy. In resolving this issue, we first consider whether the exclusion expressly violates the MVFRL or the Workers' Compensation Act. The parties do not cite any statutory provisions that expressly conflict with the subject exclusion, and we find no clear violations. Accordingly, we conclude that the workers' compensation exclusion does not expressly contradict the statutory language of the MVFRL or the Workers' Compensation Act.

We next consider the amorphous question of whether the exclusion violates the public policy underlying the MVFRL, both generally and with regard to the specific provisions governing UIM coverage and workers' compensation. This Court has consistently acknowledged that the "dominant and overarching public policy" of the MVFRL is one of cost containment. *Paylor v. Hartford Insurance Co.*, 536 Pa. 583, 640 A.2d 1234, 1235 (1994). "The repeal of the No–Fault Act and the enactment of the MVFRL reflected a legislative concern for the spiraling consumer cost of automobile insurance and the resultant increase in the number of uninsured motorists driving on public highways." *Id.* We have repeatedly recognized:

> [W]hile cost containment is not the only objective of the statute, it has become an increasingly significant one, and it is apparent that the General Assembly has been employing the vehicle of free consumer choice with greater latitude and frequency in furtherance of this objective....

*Lewis v. Erie Insurance Exchange*, 568 Pa. 105, 793 A.2d 143, 154 (2002). While it is undisputed that the purpose of underinsured motorist provisions is to provide coverage to those injured by a tortfeasor lacking adequate coverage, this is not a public policy "overriding every other consideration in contract construction." *Eichelman*, 711 A.2d at 1010.

Cost containment is inextricably linked to UM/UIM coverage. The purpose behind UIM coverage is, as noted, to protect the insured from the risk of injury caused by a negligent driver who lacks adequate insurance. *Paylor*, 640 A.2d at 1235–36 (quoting *Wolgemuth v. Harleysville Mutual Insurance Co.*, 370 Pa.Super. 51, 535 A.2d 1145, 1150 (1988), *appeal denied*, 520 Pa. 590, 551 A.2d 216 (1988)). By purchasing UIM coverage, the insured shifts that risk to his insurer. By limiting coverage, the insurer lowers its risk and the cost of the policy is lessened. The outcome does not violate public policy; it favors it.

Our inquiry, however, does not end here. Despite our repeated affirmance of the cost containment policy underlying the MVFRL, we have cautioned that it has limits. While the

enactment of the MVFRL grew out of a legislative concern for the "spiraling" costs of automobile insurance, the cost containment objective cannot be mechanically invoked as a justification for every contractual provision that restricts coverage and purportedly lessens the cost of insurance. *Burstein*, 809 A.2d at 208.

The cost containment goal protects insurers from the forced underwriting of unknown risks that insureds have not disclosed or paid to insure. *Id.* This concern lies at the heart of numerous decisions by this Court, including the seminal decisions of *Eichelman* and *Burstein.* In his Concurring and Dissenting Opinion in *Colbert,* then-Justice, now Chief Justice Castille observed that this Court, when reviewing exclusions in reference to the concept of public policy, should "ensure that both insurer and insured receive the benefit of what is statutorily required and contractually agreed upon ... and nothing more." *Colbert,* 813 A.2d at 759 (Castille, J., concurring and dissenting). Consistent with this pronouncement, we have recognized that there is a direct correlation between the premiums paid by the insured and the coverage an individual can reasonably expect to receive. *Hall v. Amica Mutual Insurance Co.,* 538 Pa. 337, 648 A.2d 755, 761 (1994) (quoting *Jeffrey v. Erie Insurance Exchange,* 423 Pa.Super. 483, 621 A.2d 635, 645 (1993)). Thus, the broad goal of cost containment cannot alter the fact that an insured is entitled to the coverage for which he contracted and paid.

Reflected in our goal to ensure that an insured receives the benefit of the contractually agreed upon coverage is our unwavering affirmation of policy exclusions where an insured is merely seeking "gratis coverage." *Generette,* 957 A.2d at 1188. Our case law is replete with examples where we have upheld contractual provisions to prevent an insured from obtaining coverage greater than that for which he paid. For example, in *Paylor,* we upheld a family car exclusion because the plaintiff was attempting to convert inexpensive UIM coverage into additional, more costly, liability coverage. *Paylor,* 640 A.2d at 1241. Similarly, this Court has declined to invalidate policy exclusions that would provide a disincentive

to purchase insurance by allowing an insured to expand coverage at the expense of the insurer. *See Windrim v. Nationwide Insurance Co.*, 537 Pa. 129, 641 A.2d 1154 (1994); *Eichelman*, 711 A.2d at 1010. Thus, where coverage was not elected and premiums were not paid, our precedent precludes an insured from demanding coverage.

It is within this framework that we evaluate the exclusion at issue. Invalidating the workers' compensation exclusion would not force Penn PRIME to underwrite an unknown risk for which it did not receive compensation. The Borough voluntarily elected to purchase optional UIM coverage. It paid a premium to Penn PRIME for this coverage, which provided protection up to $100,000 per person or per accident.[18] Thus, the Borough purchased UIM coverage that insurers are required to offer, and it paid an unallocated premium to Penn PRIME for this optional coverage. Accordingly, the instant case is distinguishable from those where a party is merely seeking "gratis coverage."

█ The application of public policy concerns in determining the validity of an insurance exclusion depends upon the factual circumstances present in each case. *Paylor*, 640 A.2d at 1240. Herein, we find Heller's assertion that the Borough purchased illusory coverage persuasive. Instantly, we are presented with the situation where a mandatory offering under the MVFRL was accepted by the Borough, who paid a premium for UIM coverage to provide additional protection to its employees who operate or occupy its vehicles.[19] The

18. The declarations page of the insurance policy indicates that the Borough paid a premium of $8,646.00 to Penn PRIME for automobile liability coverage. Included in this coverage were first party benefits, UM/UIM coverage, and "garagekeepers coverage." Complaint for Declaratory Judgment, 3/8/05, at 7–9.

19. The dissent disagrees with this conclusion, arguing that we have discounted the fact that the policy applies to non-employee passengers. Dissenting Opinion at 167–68, 32 A.3d at 1229–30. While it is theoretically possible for this coverage to apply to non-employees, we are unable to conclude that the Borough intended to purchase $100,000 in coverage for a class of transient, and potentially unauthorized, vehicle occupants that are the exception rather than the norm. Indeed, both parties acknowledge that the Borough's employees are intended benefi-

vehicles in question are used by Borough employees during the course and scope of their employment.[20] Thus, the vast majority of all UIM claims likely will be made by Borough employees who are eligible for workers' compensation. The subject exclusion, however, operates to deny UIM benefits to anyone who is eligible for workers' compensation. Therefore, we find that Penn PRIME sold the Borough additional coverage that, in effect, will not attach by virtue of an exclusion. Under the facts of this case and as applied to Borough employees, the exclusion renders the coverage illusory.[21] Further, the exclusion operates to convert Penn PRIME's statutory obligation into a sham offering. Penn PRIME received a windfall by charging the Borough a premium for the coverage.[22]

ciaries of the UIM coverage. Heller suggests that the coverage was intended to apply to all employees injured in a work-related motor vehicle accident, whereas Penn PRIME asserts that the covered class of employees is limited to those who are not disabled under the Workers' Compensation Act. See Brief for Appellant at 10–11; Brief for Appellees at 16.

20. We recognize, as Penn PRIME asserts, that the applicable policy is a fleet policy and is not limited to the Borough's police cruisers. The fact that other Borough vehicles are covered under the policy does not change our analysis. Penn PRIME's provision still excludes those who have the authority to operate the vehicles.

21. The dissent posits that the facts of this case, specifically Penn PRIME's status as a municipal liability pool, weighs against invalidating the exclusion. Dissenting Opinion at 168, 32 A.3d at 1230. Beyond bald assertions, Penn PRIME does not advance this argument. *See McLaughlin v. Gastrointestinal Specialists, Inc.*, 561 Pa. 307, 750 A.2d 283, 286 n. 6 (2000) (cautioning against addressing arguments not raised by the parties).

22. The dissent complains of the lack of record evidence "concerning the amount of the premium allocated to UIM coverage," Dissenting Opinion at 167, 32 A.3d at 1229, and attributes this failure to Heller. Due to this asserted lack of evidence, the dissent speculates that the premium could have been "negligble" and, as such, "the workers' compensation operat[ed] as the primary protection, and the UIM coverage serv[ed] as a failsafe." *Id.* at 168, 32 A.3d at 1230. It is undisputed that the premium paid was in an unallocated amount. Complaint for Declaratory Judgment, 3/8/05, at 7–9. Penn PRIME, however, does not argue that the premium attributable to the UIM coverage is "negligible," and it is not this Court's duty to address an undeveloped argument on Penn PRIME's behalf. *See McLaughlin, supra.* Furthermore, the dissent's suggestion that the premium could have been "negligible" is speculative and unsupported by the record. A

Penn PRIME attempts to refute Heller's argument by claiming that the Borough voluntarily elected to purchase UIM coverage that is limited in scope.[23]  According to Penn PRIME, the Borough only contracted and paid for coverage for employees who are not eligible for workers' compensation benefits.  While Penn PRIME does not elaborate on this assertion, one implication is that the coverage applies when the Borough's employees are using the vehicles outside the course and scope of their employment.  There is, however, no evidence in the record indicating that Borough employees may access the vehicles for personal use.  We decline to speculate as to the possible additional uses of the vehicles.  Our analysis is limited to the factual circumstances under which Heller was injured while driving his work vehicle in the course and scope of his employment.

In its argument to this Court, Penn PRIME adopts the Commonwealth Court's finding that the coverage is not illusory because it applies to "[e]mployees who may be injured but are not *disabled* under the Act." *Heller*, 950 A.2d at 371 n. 5 (emphasis in original).  This argument is specious.  Penn PRIME and the Commonwealth Court have drawn a distinction without consequence, and we fail to see how it demonstrates that the coverage is not illusory.

Workers' compensation covers injury, illness, or disease

review of the record indicates that the Borough rejected Penn PRIME's initial offer of the minimum UIM coverage limit, which would have provided coverage of $35,000.  Appellants' Supplemental Brief in Support of Motion for Summary Judgment, 7/3/07, Exhibit D. Instead, the Borough elected to purchase a higher UIM limit of $100,000, for which it paid "an additional contribution."  *Id.*

23.  Penn PRIME also highlights the optional nature of UM/UIM coverage to justify its workers' compensation exclusion, claiming that optional coverage cannot be converted into a public policy mandate.  Penn PRIME's argument is misplaced.  The optional nature of UM/UIM coverage is limited to its offer.  Once an insured elects to purchase the coverage, it is no longer "optional" and must satisfy statutory requirements and comport with public policy.  An insurer cannot invoke the optional nature of the coverage to justify numerous coverage exclusions.  To do so would permit an insurer to construct an unlimited number of exclusions such that they swallow the coverage and render it illusory.

sustained during or arising out of employment.[24] Workers' compensation pays for an injured individual's medical expenses and, in the event that the individual is unable to work, provides wage-loss compensation. Workers' compensation is not restricted to disabling injuries. It is possible to recover under the Workers' Compensation Act exclusively for medical expenses in "no lost time/medical only" claims. *See Orenich v. W.C.A.B. (Geisinger Wyoming Valley Medical Center)*, 863 A.2d 165 (Pa.Cmwlth.2004), *appeal denied*, 584 Pa. 682, 880 A.2d 1242 (2005). Thus, to the extent that an individual suffers an injury during the course and scope of his employment, but is not disabled or caused to miss work, he may still recover medical benefits under the Workers' Compensation Act. As such, he is eligible for workers' compensation and precluded from any UIM recovery he may attempt to obtain as a result of Penn PRIME's exclusion.

Moreover, Penn PRIME's argument ignores the practicalities of the situation. We cannot envision an instance where an injury sustained by a Borough employee during the course and scope of employment would render him ineligible for workers' compensation, yet give rise to a UIM claim. Any work-related injury that is of sufficient severity to warrant or necessitate a claim for UIM benefits will fall within the parameters of workers' compensation. In this vein, it is especially important to recognize the difference between UIM and UM coverage. UIM coverage applies where a tortfeasor has some insurance coverage, but the amount is insufficient to compensate the victim.[25] Stated differently, UIM coverage is triggered where an insured sustains injuries that are severe enough to warrant recovery beyond what the victim receives

24. Injury is defined as "an injury to an employe, regardless of his previous physical condition, arising in the course of his employment and related thereto, and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury." 77 P.S. § 411(1).

25. 75 Pa.C.S. § 1702 defines "underinsured motor vehicle" as a motor vehicle for which the limits of available liability insurance and self-insurance are insufficient to pay losses and damages. By contrast, an uninsured motor vehicle is one for which there is no liability insurance or self-insurance applicable at the time of the accident.

from the tortfeasor's insurer. *See Generette,* 957 A.2d at 1189. If an employee is injured while operating his employer's vehicle in the course of employment, but that injury is insufficient to implicate workers' compensation, we fail to appreciate why the employee would file a UIM claim. Such injuries should be covered by the tortfeasor's liability policy.[26] Thus, we find no merit to the allegation that Penn PRIME's policy covers Borough employees who are injured during the course of their employment but not disabled.

Despite its claim that the coverage is not illusory, Penn PRIME has not presented this Court with an instance under which coverage will attach such that it would be required to pay UIM benefits. Our own analysis fails to reveal a scenario where the coverage will meaningfully apply to the intended beneficiaries—the Borough's employees. Under the facts of the case, the exclusion renders the coverage illusory. The Borough has been denied the benefit of the bargain, while Penn PRIME has received a windfall by collecting a premium for illusory coverage. To uphold the exclusion would thwart the purpose of the MVFRL by allowing an insurer to deny benefits for which their insured paid a premium. Thus, permitting the exclusion to stand provides a disincentive for insureds to pay premiums for coverage that is not statutorily required and relieves the insurer of its obligation to provide benefits for which the insured paid. While the Borough may have received a reduced premium in exchange for what Penn PRIME deems "limited" coverage, an insured cannot contract for illusory coverage.

In addition to finding the coverage illusory as it applies to Borough employees, we conclude that the workers' compensation exclusion violates the statutory scheme for coordination of benefits evident in the MVFRL. A review of the evolution of the MVFRL reflects a clear legislative intent to place the burden for the payment of benefits on the tortfeasor or the UM/UIM carrier where a third-party causes a work-related injury. Penn PRIME's exclusion reverses this legislative

26. We note that the outcome might vary if UM, as opposed to UIM, provisions were implicated. That situation, however, is not presently before the Court.

priority by impeding the workers' compensation carrier's right of subrogation. The result of the exclusionary provision is to ensure that the burden for the payment of benefits remains on the Borough and its workers' compensation carrier. Since the exclusion frustrates the compensatory scheme established by the General Assembly, we find that it violates public policy.

Our analysis of this issue begins with a brief historical review of the MVFRL, recognizing that the amendments occasioned by Act 44 exchanged one comprehensive scheme for another. The pre-amendment MVFRL permitted the dual recovery of workers' compensation and UM/UIM benefits. Section 1735 provided that UM/UIM coverage could not be made subject to an exclusion, or benefits subject to a reduction, because of workers' compensation benefits payable. Section 1737 stated that nothing in the Workers' Compensation Act could prevent an employee from recovering UM/UIM benefits from an employer-sponsored policy. Thus, the pre-amendment version of the MVFRL expressly sanctioned recovery from employer-purchased plans and precluded insurers from constructing exclusions or benefit reductions based on the recovery of workers' compensation. *See Ducjai v. Dennis,* 540 Pa. 103, 656 A.2d 102, 106 (1995); *Hackenberg v. Southeastern Pa. Transportation Authority,* 526 Pa. 358, 586 A.2d 879, 882 n. 8 (1991).

Sections 1722 and 1720, as they pertain to workers' compensation, are also relevant herein. Section 1722 barred claimants in tort actions and UM/UIM proceedings from recovering benefits and expenses already paid by workers' compensation. Section 1720 prevented a workers' compensation carrier from seeking subrogation. Thus, workers' compensation carriers had no right of subrogation against an employee's third-party claim, and an employee was unable to recover any amounts payable under workers' compensation. *Warner v. Continental/CNA Insurance Cos.,* 455 Pa.Super. 295, 688 A.2d 177 (1996), *appeal denied,* 548 Pa. 660, 698 A.2d 68 (1997).

As the aforementioned demonstrates, the statutory framework placed the ultimate burden for the payment of benefits on the workers' compensation carrier. *Gardner,* 722 A.2d at

1045; *Hannigan v. W.C.A.B. (O'Brien Ultra Service Station)*, 860 A.2d 632, 636 (Pa.Cmwlth.2004), *appeal denied*, 582 Pa. 712, 872 A.2d 174 (2005). While it was clear that an employee could potentially obtain a dual recovery, section 1722 prohibited an employee from recovering expenses already paid through workers' compensation.[27] Thus, the employee was denied a double recovery for medical expenses and wage loss, while the workers' compensation carrier was precluded from being reimbursed from the UM/UIM recovery of the amounts already paid in compensation. The effect, and obvious legislative intent of this scheme, "was to mandate that the ultimate burden for payment of compensation benefits remain with the [w]orkers' [c]ompensation insurance and not be passed on [to] the automobile insurance [carrier] (and the premiums by which auto insurance is funded)." *City of Meadville v. W.C.A.B. (Kightlinger)*, 810 A.2d 703, 705 (Pa.Cmwlth.2002), *appeal denied*, 578 Pa. 402, 852 A.2d 1182 (2002) (quoting *Updike v. W.C.A.B. (Yeager Supply Inc.)*, 740 A.2d 1193, 1195 (Pa.Cmwlth.1999)).

Act 44 represented a legislative attempt to alter the scheme of benefits available to an employee injured in an automobile accident. *Gardner*, 722 A.2d at 1045. Under Act 44, an injured employee can still recover both workers' compensation and UM/UIM benefits, including a possible recovery from each source for the same injury.[28] With Act 44, however, the General Assembly concurrently repealed sections 1720 and 1722 as they related to workers' compensation. Consequently, there is no reduction of a claimant's recovery in UM/UIM proceedings by the amount of workers' compensation benefits received. Act 44 also granted workers' compensation carriers

**27.** Stated differently, section 1722 prevented an employee from lumping into uninsured damages a claim for all lost earnings or medical expenses. Accordingly, the effect of section 1737, which expressly sanctioned recovery of UM/UIM benefits from employer-sponsored plans, was to allow recovery for pain and suffering and for any shortfall in wage-loss reimbursement.

**28.** We have consistently held that section 1735 was not the source of the right to dual recovery. *Ducjai*, 656 A.2d at 106; *Hackenberg*, 586 A.2d at 882 n. 8; *Gardner*, 722 A.2d at 1044. As such, its repeal did not eviscerate the ability of an injured individual to collect workers' compensation and UM/UIM benefits.

the right to subrogate against any benefits received in connection with the third-party action.[29]  Accordingly, the collection of UM/UIM benefits by an employee creates a fund against which the workers' compensation carrier can exert a lien for the amounts it paid the employee for the already recompensed injury.  Thus, under the amendments, the injured worker recovers more, but the ultimate beneficiary is the workers' compensation carrier since it can exert a subrogation lien against any double recovery.  *Gardner*, 722 A.2d at 1046 (discussing *Travelers Indemnity Company of Illinois v. DiBartolo*, 131 F.3d 343, 348–49 (3d Cir.1997)).

The statutory evolution of the MVFRL demonstrates that Act 44 shifted the burden for the payment of benefits from innocent employers and their workers' compensation carriers to the tortfeasor or the insurer.  Under this scheme, it is Penn PRIME who must bear the burden of paying for Heller's work-related injury, which was caused by an underinsured third-party tortfeasor.  Penn PRIME's exclusion, however, prevents this outcome and defeats the policy underlying Act 44.[30]  As Judge Friedman recognized in her dissent, precluding from UIM coverage individuals who are eligible for workers' compensation hinders the workers' compensation carrier's subrogation interest.  The result is that the employer, innocent of any wrongdoing, and its workers' compensation carrier remain responsible for the payment of benefits, contrary to the legislative hierarchy for coordinating benefits under Act 44.  Since Penn PRIME's exclusion frustrates the compensation scheme established by the General Assembly, it violates public policy and is unenforceable.

29.  Subrogation is governed by section 319 of the Workers' Compensation Act, which provides:

Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe, his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article by the employer. . . .

77 P.S. § 671.

30.  Penn PRIME's exclusion obstructs the purpose of the Pennsylvania Workers' Compensation Act in the same manner that it interferes with the MVFRL.  *See Warner*, 688 A.2d at 185.

The policy argument based on Act 44 is not one of "supposed" public interest; the subrogation right reflects a clear statutory enactment. "[A]n enactment by the legislature—such as the MVFRL—is indeed the embodiment of public policy." *Erie Insurance Exchange v. Baker*, 601 Pa. 355, 972 A.2d 507, 511 n. 7 (2009). We recognize, as Penn PRIME argues, that allowing workers' compensation carriers to subrogate against third-party recovery is not a core policy of the MVFRL; it is limited by an insured's decision to reject UM/UIM benefits. Stated differently, the optional nature of UM/UIM coverage does not guarantee a workers' compensation carrier a right of subrogation. Where, however, an insured elects to purchase UIM coverage, this policy is undeniably implicated and must be given due consideration. Our conclusion is not altered by the mere fact that the Borough's decision to reject UIM coverage would have foreclosed the instant litigation. In instances where an employer opts to purchase UIM coverage, the General Assembly has indicated that it is the insurer, not the workers' compensation carrier, who is ultimately responsible for the payment of benefits.

Our decision in the instant case is also guided by our holding in *Williams v. GEICO Gov't Employees Ins. Co.*, 613 Pa. 113, 32 A.3d 1195 (Pa.2011). In *Williams*, we addressed whether a police officer injured in the course and scope of his employment is entitled to collect UIM benefits from his personal automobile insurance policy. The insurer in *Williams* denied coverage based on the "regular use exclusion," which precludes an insured from obtaining UIM benefits while operating a vehicle that he does not own but regularly uses. The trial court granted the insurer's motion for summary judgment, and the Superior Court affirmed. The officer appealed, arguing that application of the regular-use exclusion to police officers and other first responders violates public policy. We affirmed the exclusion, finding that it is a valid limitation on coverage consistent with the premiums paid by the insured. In accordance with our precedent, we declined to force the insurer to underwrite an unknown risk for which it did not receive compensation.

*Williams* is relevant to our analysis herein because Penn PRIME suggests that recovery of UIM benefits is unnecessary under its policy since Heller can collect UIM benefits from his personal automobile policy. Penn PRIME's argument is disingenuous. Our holding in *Williams* demonstrates that a police officer injured in the course and scope of his employment while operating his employer's vehicle cannot simply turn to his personal policy to recover additional benefits. Where the applicable policy contains a regular use exclusion, recovery is precluded. In light of our decision in *Williams,* to uphold the workers' compensation exclusion could effectively foreclose Heller's ability to recover beyond the tortfeasor's policy and the benefits available to him under workers' compensation.

In summation, we find that while the exclusionary provision does not facially violate the cost containment policy of the MVFRL, its inclusion in an employer-sponsored policy operates to foreclose the majority of expected claims. Thus, the exclusion renders the coverage illusory, and the insurer receives a windfall by charging a premium for the coverage. Moreover, where a third-party tortfeasor causes a work-related injury, Act 44 dictates that the ultimate burden for the payment of benefits must rest upon the tortfeasor or the UM/UIM carrier. Penn PRIME's exclusion reverses this legislative priority by frustrating the right of subrogation, thereby ensuring that the burden for the payment of benefits remains on the employer and its workers' compensation carrier. Since the workers' compensation exclusion operates to render the instant UIM coverage illusory and runs counter to the intended compensatory scheme established by the General Assembly, we find it void as against public policy.

The order of the Commonwealth Court is reversed.

Justices EAKIN, BAER, TODD, and McCAFFERY join the opinion.

Justice SAYLOR files a dissenting opinion in which Chief Justice CASTILLE joins.

Justice SAYLOR, dissenting.

The majority acknowledges that the workers' compensation exclusion in the underinsured ("UIM") motorist provisions of the PennPRIME Trust Liability Coverage Document does not contradict any express provision of the Motor Vehicle Financial Responsibility Law ("MVFRL") or the Workers' Compensation Act. *See* Majority Opinion at 154, 32 A.3d at 1221. Nevertheless, the majority deems the exclusion void as against public policy, based on a finding that the Borough paid a premium for UIM motorist coverage, coupled with the conclusion that the enforcement of the exclusion would render the purchased coverage illusory and confer a windfall on PennPRIME. *See id.* at 155–59, 32 A.3d at 1222–24. In this regard, the majority posits that the UIM coverage is intended to protect employees, but, for employees injured the course of their employment in automobile accidents by underinsured motorists, PennPRIME UIM coverage will always be supplanted by workers' compensation. *See id.* at 159–60, 32 A.3d at 1224–25. I have several differences with this assessment.

First, there is no evidence of record concerning the amount of the premium allocable to UIM coverage. In challenging a contractual provision on public policy grounds, Appellants bear a heavy burden of proof. *See, e.g., Generette v. Donegal Mut. Ins. Co.,* 598 Pa. 505, 522, 957 A.2d 1180, 1190 (2008). Nevertheless, they have not supported their position with concrete evidence necessary to make an intelligent assessment. In particular, without information as to the amount of the premium paid, it is impossible to determine its appropriateness relative to the value conferred by the coverage.[1]

The majority avoids addressing the abstractness of its position through a finding that *no* value was provided, *see* Majori-

1. In response, the majority observes that the precise amount of the premium allocated to the UIM coverage was evidence within PennPRIME's knowledge and control. *See* Majority Opinion at 158 n. 22, 32 A.3d at 1223–24 n. 22. While this would appear to be true, there is no suggestion that the information would not have been available to Appellants-as the parties bearing the burden of proof-via discovery or even less formally. Moreover, the majority does not explain how PennPRIME's understanding of its premium structure alters the straightforward allocation of the burden of proof to Appellants.

ty Opinion at 155–59, 32 A.3d at 1222–24, so that even a negligible premium would appear to be unjustified. Facially, however, the coverage applies to non-employees in government vehicles, *see* PennPRIME Trust Liability Coverage Document, at 32, R.R. at 51a (defining "Covered Party" to include "[a]nyone else occupying a Covered Auto"), and to employees using the vehicles in circumstances in which workers' compensation would not be applicable.

The majority nonetheless discounts the fact of coverage to non-employees, baldly indicating that the policy is intended to protect employees (albeit coverage facially extends to non-employees in government vehicles), *see id.* at 161–62, 32 A.3d at 1225, and refusing to speculate as to the use of Borough vehicles in circumstances which would not implicate workers' compensation. In this respect, the majority reasons: "Our analysis is limited to the factual circumstances under which Heller was injured while driving his work vehicle in the course and scope of his employment." *Id.* at 159, 32 A.3d at 1224.

I realize that we continue to stress that the public policy exception is applied on a case-by-case basis. However, this does not translate into a mandate to ignore the coverage an insurance policy provides in every case in which exclusions operate to foreclose coverage. No exclusion could survive such a perverse analysis. Here, it seems to me, broadly speaking, that the PennPRIME Trust Liability Coverage Document ensures that some form of coverage is provided to those injured by underinsured motorists while traveling in local government vehicles, with the workers' compensation operating as the primary protection, and the UIM coverage serving as a failsafe. In the absence of evidence that the premium paid by the Borough does not reflect the value of this sort of extension of protection, I cannot join in the majority's characterization of the insurance as illusory or in its finding of a windfall.[2]

2. Again, the majority's reasoning suggests an allocation of the burden of proof to Appellee, contrary to the established standard under which the challenger bears the burden. *See, e.g., Generette,* 598 Pa. at 522, 957 A.2d at 1190.

Judicially voiding clear contractual provisions should be the exception rather than the rule. By continuing, however, to favorably entertain abstract arguments by litigants in this arena, we invite more of the same. Furthermore, the direction is away from what, in my view, is the soundest judicial approach—that is—to rely on the Legislature and the administrative agency it has selected to make any necessary adjustments to insurance contracts prospectively where, as here, the policy considerations are mixed.

The facts and circumstances of this case provide another strong reason to decline Appellants' invitation to intrude into the PennPRIME Trust insurance arrangement. The UM/UIM coverage provided by PennPRIME is an integrated aspect of a coordinated risk scheme administered by a nonprofit trust organized as a group liability coverage pool for Pennsylvania municipal entities. *See* PennPRIME Trust Liability Coverage Document, R.R. at 20a–72a.

Municipal liability coverage pooling is a specialized, statutorily-authorized arrangement by which local government entities may join together to obtain insurance coverage and participate in the management of that coverage. Here, PennPRIME Trust represents a collective body in which the Borough maintains an interest. With regard to the automobile insurance component of such risk management schemes, there is obviously a smaller group of members to share risks than in broader-scale commercial insurance arrangements. Thus, assuming the portion of the premium allocable to UIM insurance was calculated (as it should have been) with the workers' compensation exclusion in mind, the judicial disapproval of that exclusion is likely to have a very substantial impact on future premiums and other interests of participating municipalities.

In summary, in the setting of a pooled risk management arrangement, the relationship between premiums and coverage is far too complex to be assessed on a record as barren as this one.[3]

3. In its rejoinder, the majority indicates that PennPRIME does not argue that its status as a municipal liability pool weighs against invali-

The majority also posits that the "evolution of the MVFRL reflects a clear legislative intent to place the burden for the payment of benefits on the tortfeasor or the UM/UIM carrier where a third-party causes a work-related injury." *Id.* at 161, 32 A.3d at 1225. Curiously, the majority derives this "clear intent," in part, from amendments removing a prohibition against offsetting UM/UIM coverage by workers' compensation benefits. *See id.* at 160–62, 32 A.3d at 1225–26.

In the automobile insurance arena, the General Assembly has been engaged in reordering payment responsibilities, under the MVFRL, of medical, workers' compensation, disability, automobile insurance, and other carriers, incurred as a result of motor vehicle accidents. The objective is to maintain affordable premiums while ensuring carriers will continue to provide coverage, and the adjustments seem to favor the segment of the insurance industry which, at any given time, appears least able to redress losses without impacting premiums or financial viability. In such a landscape, I fail to discern any overarching public policy in terms of where the burden should fall, other than in the express direction of the General Assembly. Here, the majority concedes there simply is no such direction. *See id.* at 154, 32 A.3d at 1221. Moreover, there is particularly none relative to non-profit pooled risk management schemes implemented for the sake of local governments.

Chief Justice CASTILLE joins this dissenting opinion.

---

dating the exclusion. *See* Majority Opinion at 158 n. 21, 32 A.3d at 1223 n. 21. As I read the brief, however, PennPRIME does, in fact, so argue. *See, e.g.,* Brief for Appellees at 9 ("Furthermore, public policies supporting cost containment and consumer flexibility are heightened by the Borough's status as a local agency and its decision to purchase UIM coverage (from a municipal pool) that included the subject exclusion."); *id.* at 17 (contending that "the Borough's status as a public employer is particularly relevant").