J-A09018-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ATLANTIC CASUALTY INSURANCE COMPANY, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| EDWARD ZYMBLOSKY, EDWARD ZYMBLOSKY, JR., EDWARD ZYMBLOSKY, III AND GAIL ZYMBLOSKY; BOOTS & HANKS TOWING & WRECKING; BOOTS & HANKS TOWING & WRECKING SERVICE; BOOKS & HANKS, INC.; HEIDI HOUSER, ROBERT HOUSER, DOROTHY HOUSER, DELBERT HOUSER, MARY OGDEN, MARY IRWIN AND THOMAS IRWIN, INDIVIDUALLY AND AS PARENTS AND NATURAL GUARDIANS OF E.I., A MINOR; BEN WEITSMAN & SON, INC., BEN WEITSMAN & SON OF SCRANTON, LLC; BEN WEITSMAN OF SCRANTON; UPSTATE SHREDDING, LLC, UPSTATE SHREDDING DISC., INC., | |
| APPEAL OF: HEIDI HOUSER AND ROBERT HOUSER; DOROTHY HOUSER AND DELBERT HOUSER; MARY OGDEN; MARY IRWIN AND THOMAS IRWIN, INDIVIDUALLY AND AS PARENTS AND NATURAL GUARDIANS OF E.I., A MINOR | No. 1167 MDA 2016 |

Appeal from the Order Entered June 15, 2016
In the Court of Common Pleas of Lackawanna County
Civil Division at No(s): 2015 CV 01571

BEFORE: SHOGAN, OTT, and STABILE, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED JULY 17, 2017**

Heidi Houser, Robert Houser, Dorothy Houser, Delbert Houser, Mary Ogden, and Mary and Thomas Irwin, individually and as parents and natural guardians of E.I., a minor, ("Appellants") appeal from the order granting Atlantic Casualty Insurance Company's ("Atlantic") motion for summary judgment and entering judgment in favor of Atlantic in this declaratory judgment action. We affirm.

Atlantic filed a declaratory judgment complaint pursuant to 42 Pa.C.S. § 7531, *et. seq.*, against Appellants and other involved parties as discussed below, on February 18, 2015. In its declaratory judgment complaint, Atlantic asserted that it had no duty to defend or indemnify any party in the underlying action of ***Heidi Houser, et. al. v. Boots & Hanks Towing & Wrecking Service, et. al.,*** No. 2013 CV 6433 ("The Underlying Action").

The trial court summarized the factual and procedural history of this case as follows:

> The Underlying Action was filed on May 16, 2014 by [Appellants]. [Appellants] allege that [Edward Zymblosky, Edward Zymblosky Jr., Edward Zymblosky III, Gail Zymblosky, and Boots & Hanks Towing and Wrecking Service ("the Zymblosky Defendants")] own property at 1500 North Keyser Avenue in Scranton, Pennsylvania ("the property"), where Defendants Ben Weitsman & Son, Inc., Ben Weitsman & Son of Scranton LLC, Ben Weitsman of Scranton, Upstate Shredding LLC and Upstate Shredding Disc., Inc. ("the Weitsman Defendants") allegedly operate a scrap metal recycling facility pursuant to a lease with one or more of the Zymblosky Defendants. On November 28, 2011, the Weitsman Defendants engaged in an operation involving scrap metal and negligently caused chlorine

gas to release from a cylinder/tank/vessel stored on the property, which, in turn, released the gas into the air and created a cloud of chlorine gas to form. At the same time, [Appellants] Heidi and Dorothy Houser were working in an outdoor lot next to the property, selling Christmas trees, while Mary Ogden, Mary Irwin, and Emilie Irwin were traveling in a vehicle on North Keyser Avenue near the property. All [Appellants] claim they were exposed to the cloud of chlorine gas and as a result, suffered injuries.

Atlantic is involved in the Underlying Action because it issued an insurance policy ("the Policy") for the salvage yard located on the property owned by the Zymblosky Defendants. Christopher Slezak ("Slezak"), owner and insurance agent for CSI & Associates ("CSI"), on behalf of the Zymblosky Defendants obtained the Policy from Atlantic through its Managing General Agent, Aberdeen Insurance Group ("Aberdeen"). Barbara Rosetti ("Rosetti"), a licensed insurance agent who services client accounts at CSI for the past ten years, also worked on the Zymblosky Defendants' account with regard to the Policy. The Policy contained a "Total Pollution Exclusion Endorsement," which allegedly excludes coverage for the event at issue in the Underlying Action. For this reason, Atlantic filed a Complaint on February 18, 2015, for Declaratory Judgment that it has no duty to defend or indemnify any party in the Underlying Action.

Subsequent to Defendants' Answers to the Complaint, Atlantic filed a Motion for Judgment on the Pleadings on May 14, 2015. Thereafter, [the trial court] issued an Order denying [Atlantic's] Motion in order to more fully develop the factual record. By doing so, [the trial court] believed it would better be able to determine whether the Total Pollution Exclusion Endorsement is valid and whether Atlantic correspondingly owes a duty to defend and indemnify the insured in the Underlying Action. Complying with [the trial court's order], the parties conducted discovery and based on the information gathered, [Atlantic] filed a Motion for Summary Judgment on February 25, 2016, asserting again that it had no duty to defend and/or indemnify Defendants in the Underlying Action based on the Policy's Total Pollution Exclusion Endorsement.

The Houser and Zymblosky Defendants filed individual Replies to Atlantic's Motion on March 28, 2016. Notwithstanding

- 3 -

their continued assertion that chlorine is not a pollutant, the Zymblosky and Houser Defendants also contend that regardless of the exclusion policy, "the Zymbloskys were provided something less than what they had bargained for regarding the insurance coverage (Reasonable Expectation Theory)."

Trial Court Opinion, 6/15/16, at 2-4 (internal citations omitted).

Oral argument was held on Atlantic's motion on May 12, 2016. The trial court issued an order on June 15, 2016, granting Atlantic's motion for summary judgment and entering judgment in favor of Atlantic. On July 12, 2016, the Houser Defendants filed a notice of appeal.[1] A Pa.R.A.P. 1925(b) statement was not ordered. The trial court submitted a statement to this Court, indicating that in lieu of filing a Pa.R.A.P. 1925(a) opinion, it was relying on its June 15, 2016 Memorandum and Order, which granted Atlantic's motion for summary judgment. Trial Court Letter, 9/29/16, at 1.

Appellants present the following issues for our review:

[1.] Where the total pollution exclusion contained within the Atlantic Casualty policy renders the coverage illusory and as such is void as against public policy?

[2.] Whether [Atlantic's] motion for summary judgment should have been denied as genuine issues of material fact exist that must be determined by the trier of fact?

3. Whether genuine issues of material fact remain as to the insured's reasonable expectations such that [Atlantic's] motion for summary judgment should have been denied?

_____

[1] The record does not reflect appeals by the other defendants.

Appellants' Brief at 4 (unnecessary capitalization omitted).[2]

"The proper construction of an insurance policy is resolved as a matter of law to be decided by the court in a declaratory judgment action." ***Swarner v. Mutual Ben. Group***, 372 A.3d 641, 644 (Pa. Super. 2013).

> The Declaratory Judgments Act may be invoked to interpret the obligations of the parties under an insurance contract, including the question of whether an insurer has a duty to defend and/or a duty to indemnify a party making a claim under the policy. Both the duty to defend and the duty to indemnify may be resolved in a declaratory judgment action. [***General Accident Ins. Co. of America v. Allen***, 692 A.2d 1089, 1096 (Pa. 1997)] citing ***Harleysville Mutual Ins. Co. v. Madison***, 415 Pa.Super. 361, 609 A.2d 564 (1992) (insurer can seek determination of obligations to insured before conclusion of underlying action) (additional citations omitted).
>
> It is well established that an insurer's duties under an insurance policy are triggered by the language of the complaint against the insured. In determining whether an insurer's duties are triggered, the factual allegations in the underlying complaint are taken as true and liberally construed in favor of the insured.
>
> The obligation of an insurer to defend an action against the insured is fixed solely by the allegations in the underlying complaint. As long as a complaint alleges an injury which may be within the scope of the policy, the insurer must defend its insured until the claim is confined to a recovery the policy does not cover.
>
> The particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered. Instead it is necessary to look at the factual allegations contained in the complaint. If we were to allow the manner in which the complainant frames the request for damages to control the coverage question, we would permit insureds to circumvent exclusions that are clearly part of the policy of

---

[2] We have renumbered Appellants' issues for ease of disposition.

insurance. The insured would receive coverage neither party intended and for which the insured was not charged. The fact that the plaintiffs couched their claims in terms of negligence does not control the question of coverage.

We focus primarily on the duty to defend because it is broader than the duty to indemnify. If an insurer does not have a duty to defend, it does not have a duty to indemnify. However, both duties flow from a determination that the complaint triggers coverage.

*American Nat. Property and Cas. Companies v. Hearn*, 93 A.3d 880, 884 (Pa. Super. 2014) (some internal citations and quotation marks omitted).

In reviewing orders granting summary judgment, we note the following:

Our scope of review of an order granting summary judgment is plenary. We apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.

*National Cas. Co. v. Kinney*, 90 A.3d 747, 752 (Pa. Super. 2014) (internal citations and quotation marks omitted). "The appellate Court may disturb the trial court's order only upon an error of law or an abuse of discretion." *Id.* at 753.

In their first issue, Appellants argue that the total pollution exclusion contained within the insurance policy renders the coverage illusory and as

such, is void against public policy. Appellants' Brief at 4, 20. Appellants rely on *Heller v. Pennsylvania League of Cities & Municipalities*, 32 A.3d 1213 (Pa. 2011), in support of this assertion. *Id.* at 22-23. Appellants argue that the total pollution exclusion would bar almost all claims by the Zymbloskys due to the nature of their business, rendering the policy useless. *Id.* at 23-26. Appellants argue that under the definition of pollutant in the policy, "any substance regardless of form (solid, liquid, or gas) may be considered a pollutant." *Id.* at 25. Appellants further assert that the definition includes "waste," which is further defined to include "material to be recycled, reconditioned or reclaimed." *Id.* According to Appellants, "[t]he entire nature of the Zymblosky's business is to recycle, reclaim, and/or recondition materials." *Id.* "Therefore, almost all foreseeable injury or property damage would have been caused in part by the movement of waste/scrap metal on the property and therefore be excluded from coverage pursuant to the total pollution exclusion." *Id.* at 26.

The relevant portion of the pollution exclusion in the policy provides as follows:

**TOTAL POLLUTION EXCLUSION ENDORSEMENT**

Exclusion f. under paragraph 2, Exclusions of Section I – Coverage A – Bodily Injury and Property Damage Liability is replaced by the following:

This insurance does not apply to:

f. Pollution

> (1) "Bodily injury" . . . which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

Insurance policy, 11/24/10, Total Pollution Exclusion Endorsement, at 5.

The policy defines "pollutants" as:

> solid, liquid, gaseous, or thermal irritant or containment or all material for which a Material Safety Data Sheet is required pursuant to federal, state, or local laws, where ever discharged, dispersed, seeping, migrating or released, including onto or into the air or any air supply, water or any water supply or land, including but not limited to petroleum, oil, heating oil, gasoline, fuel oil, carbon monoxide, industrial waste, acid, alkalis, chemicals, waste, treated sewage; and associate smoke, vapor, soot and fumes from said substance. Waste includes material to be recycled, reconditioned or reclaimed.

*Id.*

The trial court stated the following regarding the determination to define chlorine as a pollutant:

> Here [Appellants] failed to present [] evidence demonstrating why chlorine gas should not be considered a pollutant or contaminant as defined by Atlantic's policy. . . .
>
> In fact, the only evidence presented to this [c]ourt favors defining chlorine as a pollutant. For example, [Atlantic] presented evidence including: (1) dictionary definitions of chlorine state that "chlorine is a gaseous chemical agent which elicits an inflammatory response"; (2) the Sixth Circuit in U.S. Fidelity and Guaranty Co., supra found that chlorine is a pollutant within the meaning of the policy at issue and that the bodily injury did arise from a discharge of this pollutant; (3) federal/state statutes and regulations define and treat chlorine gas as a pollutant; (4) the Policy defines a 'pollutant' as a material requiring a MSDS, which chlorine gas requires; (5) the Underlying Complaint makes specific allegations and admissions that its inhalation caused the Underlying Plaintiffs' physical harm; and (6) it is undisputed that chlorine gas is a dangerous

- 8 -

and potentially deadly chemical. For these reasons, [the trial court found] that chlorine gas is a potentially hazardous and toxic material. Therefore, chlorine is an irritant or contaminant constituting a pollutant under the Policy.

Trial Court Opinion, 6/15/16, at 27-28. Thus, we agree with the trial court's conclusion that there was no genuine issue of material fact regarding the classification of chlorine as a pollutant under the policy.

Next, we consider whether the pollution exclusion renders the coverage illusory and as a result, contravenes public policy, as alleged by Appellants.

> Generally, courts must give plain meaning to a clear and unambiguous contract provision unless to do so would be contrary to a clearly expressed public policy. In several recent cases, this Court has examined claims that unambiguous provisions in [] insurance policies are unenforceable because they violate public policies [. . . .] In response, we have affirmed our reticence to throw aside clear contractual language based on "the often formless face of public policy." With regard to the concept of public policy, we have stated:
>
>> Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. As the term "public policy" is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy.... Only dominant public policy would justify such action. In the absence of a plain indication of that policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, the Court should not assume to declare contracts ... contrary to public policy. The courts must be content to await legislative action.
>>
>> It is only when a given policy is so obviously for or against the public health, safety, morals or welfare

> that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring that the contract is against public policy.

***Heller***, 32 A.3d at 153-154 (some internal quotation marks and citations omitted).

As noted, Appellants rely on ***Heller*** in support of their contention that the policy exception resulted in illusory coverage in contravention of public policy. This Court previously summarized the holding in ***Heller*** as follows:

> In ***Heller***, our Supreme Court was asked to determine whether "it [was] a violation of public policy to exclude from underinsured motorist (UIM) coverage a claim by an individual eligible for workers' compensation benefits." ***Heller***, 32 A.3d at 1215. The appellant (Heller) was severely injured in an automobile accident during the course of his employment as a police officer for Sugarcreek Borough. ***Id.*** Subsequently, Heller sought UIM benefits from the borough under a policy issued by the appellee [an insurer], who ultimately denied Heller's claim under a policy exclusion providing that UIM coverage did not apply to "any claim by anyone eligible for workers' compensation benefits." ***Id.***
>
> The Supreme Court noted that the borough voluntarily elected to purchase the optional UIM coverage and paid a premium to the appellee for the coverage. ***Id.*** at 1222. The Supreme Court therefore found persuasive Heller's argument that the borough purchased illusory coverage. ***Id.*** at 1223, 1228. As the Supreme Court observed:
>
> > Instantly, we are presented with the situation where a mandatory offering under the Motor Vehicle Financial Responsibility Law (MVFRL) was accepted by the borough, who paid a premium for UIM coverage to provide additional protection to its employees who operate or occupy its vehicles. The vehicles in question are used by borough employees during the course and scope of their employment. Thus, **the vast majority of all UIM claims likely**

- 10 -

> **will be made by borough employees who are
> eligible for workers' compensation**. The subject
> exclusion, however, operates to deny UIM benefits to
> anyone who is eligible for workers' compensation.
> **Therefore, we find that [the appellee] sold the
> borough additional coverage that, in effect, will
> not attach by virtue of an exclusion**. Under the
> facts of this case and as applied to borough
> employees, **the exclusion renders the coverage
> illusory**. Further, the exclusion operates to convert
> the appellee's statutory obligation into a sham
> offering. The appellee received a windfall by
> charging the borough a premium for the coverage.

*Heller*, 32 A.3d at 1223 (emphases in original). The court further

remarked:

> To uphold the exclusion would thwart the purpose of the [law]
> by allowing an insurer to deny benefits for which their insured
> paid a premium. Thus, permitting the exclusion to stand
> provides a disincentive for insureds to pay premiums for
> coverage that is not statutorily required and relieves the insurer
> of its obligation to provide benefits for which the insured paid.
> While the borough may have received a reduced premium in
> exchange for what the appellee deems "limited" coverage, an
> insured cannot contract for illusory coverage.

> *Id.* at 1225.

*Westfield Ins. Co. v. Astra Foods Inc.*, 134 A.3d 1045, 1053 (Pa. Super.

2016).

In *Westfield*, this Court found *Heller* inapplicable because the policy

exclusion at issue was not aimed at foreclosing the majority of expected

claims; rather, it only excluded a claim under the factual circumstances of

that particular case. *Westfield Ins. Co.*, 134 A.3d at 1054. Additionally, in

*TIG Ins. Co. v. Tyco International Ltd.*, 919 F. Supp. 2d 439, 466 (M.D.

Pa. 2013),[3] the court presented the following tenets regarding illusory insurance coverage:

> Insurance coverage is considered "illusory" where the insured purchases no effective protection. An insurance policy is not illusory if it provides coverage for some acts; it is not illusory simply because of a potentially wide exclusion. Coverage under an insurance policy is not illusory unless the policy would not pay benefits under any reasonably expected set of circumstances. Contracts are illusory when one party exploits the other; where the contracts are hopelessly or deceptively one-sided.

*Id.* at 466 (internal citations and quotations omitted). Indeed, the **TIG Ins. Co.** Court cited **Heller** for the principle that: "Whether coverage is illusory must be determined under the specific facts of each case." **Id.** at 466. (citing **Heller**, 32 A.3d at 1223. "The relevant inquiry is whether a particular coverage provision is swallowed-up by an exclusion, not whether the policy as a whole provides some degree of coverage despite the existence of an exclusion." **TIG Ins. Co**., 919 F. Supp. 2d at 466.

In the case *sub judice*, we agree with the trial court's conclusion that **Heller** is not applicable. Trial Court Opinion, 6/15/16, at 35. We can anticipate many types of incidents that could occur on the subject property that would not be excluded by the policy's total pollution exclusion. Indeed, Atlantic has presented two such potential scenarios where the policy would

---

[3] "While we recognize that federal district court cases are not binding on this court, Pennsylvania appellate courts may utilize the analysis in those cases to the extent we find them persuasive." **Umbelina v. Adams**, 34 A.3d 151, 159 n.2 (Pa. Super. 2011).

provide coverage: 1) where a customer or invitee suffered a slip and fall on the premises due to an irregular physical condition of the premise's surface area due to poor maintenance; or 2) where a customer or invitee was on the premises while the insured was doing demolition work on a vehicle and the customer or invitee was injured by such process. Atlantic's Brief at 32. Further, we cannot agree with Appellants' interpretation of "waste" as it is presented in the policy's definition of "pollutants." "Waste" as used in that definition refers to waste resulting from the discharge, dispersal, seeping, migrating or release of a pollutant. Insurance Policy, 11/24/10, Total Pollution Exclusion Endorsement, at 5. Thus, we do not interpret "waste" as used in the "pollutants" definition to apply to any and all recycled, reclaimed, or reconditioned substances in the salvage yard, as argued by Appellants.

Accordingly, we conclude that the total pollution exclusion would not bar "almost all claims" made under the policy. Even assuming, *arguendo,* that the pollution exclusion is a potentially wide exclusion, the coverage still is not illusory because it will provide coverage under other reasonably expected sets of circumstances. Thus, the exclusion does not render the coverage illusory in contravention of public policy. Appellants' claim therefore fails.

In their second issue, Appellants argue that the trial court erred in granting Atlantic's motion for summary judgment. Appellants' Brief at 20. After setting forth statements of law regarding the standard for entry of

summary judgment in the argument section of their brief on this issue, Appellants simply state: "The evidence in this matter demonstrates that genuine issue of material fact remain regarding whether [Atlantic] has a duty to defend and indemnify the Zymblosky Defendants. As such, the lower Court erred in granting [Atlantic's] Motion for Summary Judgment." *Id.* at 20. Appellants do not further develop this argument nor do they identify those remaining genuine issues of material fact.

"Where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." *Umbelina v. Adams*, 34 A.3d 151, 161 (Pa. Super. 2011); Pa.R.A.P. 2119(a). "This Court will not act as counsel and will not develop arguments on behalf of an appellant." *Irwin Union Nat. Bank and Trust Co. v. Famous,* 4 A.3d 1099, 1103 (Pa. Super. 2010). It is not this Court's responsibility to comb through the record seeking the factual underpinnings of a claim. *Id.* When deficiencies in a brief hinder our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived. *Id.*; Pa.R.A.P. 2101. Because Appellants' failure to sufficiently develop their argument significantly hinders our ability to conduct meaningful review of this issue, we find this claim waived. *Id.*; Pa.R.A.P. 2101.

In their final issue, Appellants maintain that summary judgment was improperly entered because there are genuine issues of material fact that remain as to the insured's reasonable expectations regarding insurance coverage. Appellants' Brief at 29. In support of their position, Appellants argue that the trial court focused solely on the representations made by Slezak to the Zymbloskys and failed to consider the representations made directly by Atlantic to the Zymbloskys. *Id.* at 31. Appellants contend that Atlantic directly represented to the Zymbloskys that they would be covered for activities inherent in operating a salvage yard. *Id.* Appellants further argue that the trial court erred in concluding that Slezak was the exclusive agent of the Zymbloskys. *Id.* at 35. Appellants contend that there is a genuine issue of material fact as to whether Slezak was a dual agent working for Atlantic and therefore representations by Slezak can be attributed to Atlantic. *Id.* Additionally, Appellants assert that the Zymbloskys reasonably relied on the representations made by Slezak, who was acting as an agent for Atlantic, and that the Zymbloskys reasonably expected that their business was covered. *Id.* at 38.

The trial court concluded that the reasonable expectations doctrine is inapplicable and does not void the total pollution exclusion endorsement in the policy. Trial Court Opinion, 6/15/16, at 28. Specifically, the trial court found that Slezak's alleged deception did not cause the Zymbloskys to reasonably believe that the injuries due to pollutant exposure were covered

under the policy, as there was no ambiguity in the policy's exclusion of coverage for bodily injury caused by a pollutant. *Id.* at 28-31. Moreover, the evidence supports the conclusion that Slezak was not an agent of Atlantic who could bind Atlantic by his representations, but rather was an agent of CSI and the Zymbloskys. *Id.* at 28-33. Furthermore, Appellants present no evidence of representations made directly by Atlantic to the Zymbloskys. *See* Appellants' Brief at 31-35. The trial court addressed Appellants' claims in great detail in its opinion entering summary judgment, and the trial court's determinations on these issues are supported by the evidence of record. Accordingly, we affirm the trial court's decision and do so based on the thorough trial court opinion entered on June 15, 2016, granting Atlantic's motion for summary judgment.[4] Because there was no genuine issue of material fact regarding these matters, the trial court properly entered summary judgment.

Order affirmed.

---

[4] The parties are directed to attach copies of this opinion to future filings in the event of further proceedings in this matter.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/17/2017

Filed 8/5/2016 10:02:00 AM Superior Court Middle District
1167 MDA 2016

| | | |
|---|---|---|
| ATLANTIC CASUALTY INSURANCE COMPANY, | : | IN THE COURT OF COMMON PLEAS |
| Plaintiff | : | OF LACKAWANNA COUNTY |
| -vs- | : | CIVIL ACTION – LAW |
| EDWARD ZYMBLOSKY T/A BOOTS & HANKS TOWING AND WRECKING A/K/A BOOT'S & HANK'S TOWING AND WRECKING SERVICE A/K/A BOOTS & HANKS TOWING AND WRECKING SERVICE, EDWARD ZYMBLOSKY, JR., EDWARD ZYMBLOSKY, III, GAIL ZYMBLOSKY, BOOTS AND HANKS, INC., A/K/A BOOTS & HANKS, INC., HEIDI AND ROBERT HOUSER, H/W, DOROTHY AND DELBERT HOUSER, H/W, MARY OGDEN, MARY AND THOMAS IRWIN, H/W, INDIVIDUALLY, AND AS GUARDIANS AND PARENTS OF EMELIE IRWIN, BEN WEITSMAN & SON, INC., UPSTATE SHREDDING, LLC, BEN WEITSMAN & SON OF SCRANTON, LLC, BEN WEITSMAN OF SHREDDING DISC., INC., | : | 2015-CV-1571 |
| Defendants | : | |
| | : | |

.........................................................................................................................
.........................................................................................................................

## MEMORANDUM AND ORDER

**Mazzoni, S.J.**

### I. INTRODUCTION

Plaintiff Atlantic Casualty Insurance Company's ("Atlantic") Motion for Summary Judgment and Memorandum of Law in Support in this declaratory judgment action is currently before this Court. Atlantic argues that it has no duty to defend or indemnify Defendants Edward Zymblosky, Edward Zymblosky Jr., Edward Zymblosky III, Gail Zymblosky, and Boots & Hanks Towing and Wrecking Service ("Zymblosky Defendants") in the underlying matter of

<u>Heidi Houser, et. al. v. Boots & Hanks Towing & Wrecking Service</u>, et. al., No. 2013 CV 6433 ("The Underlying Action"). (Docket Entry Nos. 24, 25).

On February 25, 2016, Atlantic moved for Summary Judgment, specifically arguing that it has no duty to defend or indemnify the Zymblosky Defendants because (1) chlorine is a pollutant barred from coverage under the Policy's Total Pollution Exclusion Endorsement, (2) the Zymblosky Defendants have no reasonable expectation of coverage for pollutant exposure, (3) the Total Pollution Exclusion Endorsement in the Policy does not contravene public policy, and (4) punitive damages are also barred from coverage under the Policy. After reviewing the comprehensive briefs in support of and opposition to Plaintiff's Motion for Summary Judgment submitted by all parties, hearing oral argument on the same by parties' counsels and thereafter, analyzing the appropriate governing authority, this Court finds Plaintiff is entitled to Summary Judgment as to all claims. A more thorough analysis of this Court's decision is detailed below.

## II. <u>PROCEDURAL HISTORY AND OPERATIVE FACTUAL ALLEGATIONS</u>

The Underlying Action was filed on May 16, 2014 by Heidi Houser, Robert Houser, Dorothy Houser, Delbert Houser, Mary Ogden, Mary Irwin, and Thomas Irwin, individually and as parents and guardians of Emelie Irwin ("The Houser Defendants" and/or "Underlying Plaintiffs). (Docket Entry No. 25 at p. 1). The Underlying Plaintiffs allege that the Zymblosky Defendants own property at 1500 North Keyser Avenue in Scranton, Pennsylvania ("the property"), where Defendants Ben Weitsman & Son, Inc., Ben Weitsman & Son of Scranton LLC, Ben Weitsman of Scranton, Upstate Shredding LLC and Upstate Shredding Disc., Inc. (the "Weitsman Defendants") allegedly operate a scrap metal recycling facility pursuant to a lease with one or more of the Zymblosky Defendants. (<u>Id.</u> at p. 6). On November 28, 2011, the Weitsman Defendants engaged in an operation involving scrap metal and negligently caused

2

chlorine gas to release from a cylinder/tank/vessel stored on the property, which, in turn, released the gas into the air and created a cloud of chlorine gas to form. (Id. at p. 7). At the same time, Underlying Plaintiffs Heidi and Dorothy Houser were working in an outdoor lot next to the property, selling Christmas trees, while Mary Ogden, Mary Irwin, and Emilie Irwin were traveling in a vehicle on North Keyser Avenue near the property. (Id.). All Underlying Plaintiffs claim they were exposed to the cloud of chlorine gas and as a result, suffered injuries. (Id. at pp. 7-8).

Atlantic is involved in the Underlying Action because it issued an insurance policy ["the Policy"] for the salvage yard located on the property owned by the Zymblosky Defendants. (Docket Entry No. 23 at p. 3). Christopher Slezak ("Slezak"), owner and insurance agent for CSI & Associates ("CSI"), on behalf of the Zymblosky Defendants obtained the Policy from Atlantic through its Managing General Agent, Aberdeen Insurance Group ("Aberdeen"). (Docket Entry No. 34 at pp. 4, 7, 22; Docket Entry No. 25 at p. 18). Barbara Rosetti ("Rosetti"), a licensed insurance agent who services client accounts at CSI for the past ten years, also worked on the Zymblosky Defendants' account with regard to the Policy. (Docket Entry No. 25 at p. 24). The Policy contained a "Total Pollution Exclusion Endorsement," which allegedly excludes coverage for the event at issue in the Underlying Action. (Docket Entry No. 23 at pp. 3-4). For this reason, Atlantic filed a Complaint on February 18, 2015 for Declaratory Judgment that it has no duty to defend or indemnify any party in the Underlying Action. (Docket Entry No. 1).

Subsequent to Defendants' Answers to the Complaint, Atlantic filed a Motion for Judgment on the Pleadings on May 14, 2015. (Docket Entry No. 14). Thereafter, this Court issued an Order denying Plaintiff's Motion in order to more fully develop the factual record. By doing so, this Court believed it would better be able to determine whether the Total Pollution

3

Exclusion Endorsement is valid and whether Atlantic correspondingly owes a duty to defend and indemnify the insured in the Underlying Action. (Docket entry No. 23). Complying with this Court's Order, the parties conducted discovery and based on the information gathered, Plaintiff Atlantic filed a Motion for Summary Judgment on February 25, 2016, asserting again that it had no duty to defend and/or indemnify Defendants in the Underlying Action based on the Policy's Total Pollution Exclusion Endorsement. (Docket Entry No. 24).

The Houser and Zymblosky Defendants filed individual Replies to Atlantic's Motion on March 28, 2016. (Docket Entry Nos. 30, 32). Notwithstanding their continued assertion that chlorine is not a pollutant, the Zymblosky and Houser Defendants also contend that regardless of the exclusion policy, "the Zymbloskys were provided something less than what they had bargained for regarding the insurance coverage (Reasonable Expectation Theory)." (Id.).

Specifically, all Defendants allege when Edward Zymblosky III took over Boots & Hanks in 2005, he started using the services of Slezak, an insurance agent working for CSI. (Docket Entry No. 34 at p. 7). The Zymblosky Defendants believed that Slezak would procure the necessary insurance to cover the Zymbloskys' operations, including the salvage yard. (Id.). Edward Zymblosky III testified that he informed Slezak that the operations on the salvage yard included selling used auto parts from motor vehicles and scraping the remaining portions of the vehicle, that Slezak visited/inspected the yard, and that thereafter, Slezak informed the Zymbloskys that he would obtain insurance coverage for the salvage yard operation. (Id.). Edward Zymblosky III further testified that Slezak generally went over the policy with the Zymbloskys, and told them that acts of terrorism were the only events not covered. (Id. at pp. 7-8). Although Edward Zymblosky, Jr., testified that he read through the insurance policies, he also stated that he did not understand them and thus, relied on the representations of the

4

insurance agent, the face of the insurance policy, and reasonably expected that his business was covered. (Id. at p. 8).

Lastly, the Houser and Zymblosky Defendants maintain that the subject total pollutant exclusion is against public policy because the exclusion makes the entire policy paid for by the Zymbloskys illusory and void. (Docket Entry No. 23 at p. 5). Specifically, Defendants contend that the exclusion renders the policy useless because it "precludes coverage for any claim that is causally connected to the discharge, dispersal, seepage, migration, release or escape of recycled, reconditions, and/or reclaimed materials." (Docket Entry No. 34 at p. 18).

All briefs were timely filed by each party and reviewed by this Court. Thereafter, oral argument on Plaintiff's Motion was held before this Court on May 12, 2016 at 9:00am. As a result, the parties' arguments and this Court's analysis thereof are further detailed and discussed below.

## A. Plaintiff-Atlantic's Arguments

### 1. There is No Duty to Defend or Indemnify Under the Exclusion

#### a. The Underlying Plaintiffs' injuries would not have occurred but for the release of a pollutant

Plaintiff maintains that the Policy at issue "expressly makes clear...that the causation element in applying [the Total Pollution Exclusion] is 'but for' causation." (Docket Entry No. 25 at pp. 35-36). In addition, Plaintiff argues that each count set forth in the Underlying Complaint "is ultimately based on the exposure to the toxic chlorine gas and injuries to the Underlying Plaintiffs caused by it." (Id. at p. 37). For these reasons, Plaintiff concludes that "[t]he...release...of the chlorine gas was a direct cause of the harm, clearly falling within the scope of 'but for' causation required to establish the application of the 'Total Pollution Exclusion' endorsement in the Policy." (Id.).

5

### b.     Chlorine is a Pollutant

Plaintiff contends that "there is no question that the hazardous and toxic chlorine gas pleaded by the Underlying Plaintiffs meets the definition of 'pollutant' under the Total Pollution Exclusion Endorsement..." (Docket Entry No. 25 at p. 37).  Relying on Ford City Borough Municipal sewage Disposal Authority v. EMC Insurance Companies, 73 Pa.D.&C. 4th 225, 203-233 (C.C.P. Armstrong 2005), Plaintiff asserts that "[t]here is no genuine issue that hazardous and toxic chlorine gas is a 'pollutant', as defined in the Atlantic Policy." (Id.).  Moreover, definitions of chlorine in the dictionary demonstrate that "chlorine is a gaseous chemical agent which elicits an inflammatory response," and therefore "fits the definition of an irritant as that term is used in the pollution exclusion of the policy." (Id. at p. 38).  Additionally, the Sixth Circuit in U.S. Fidelity and Guaranty Co. v. Jones Chemical, Inc., 1999 U.S. App. LEXIS 24306, *2 (6th Cir. 1999) found that chlorine is a pollutant within the meaning of the policy at issue and that the bodily injury did arise from a discharge of this pollutant.  (Id. at p. 39) (See also Matcon Diamon v. Penn National Insurance Co., 815 A.2d 1109, 1113 (Pa. Super. 2003) (finding that "the trial court did not err as a matter of law in determining that carbon monoxide was a 'pollutant' under the policy.")).

Plaintiff further maintains that "the statutory and regulatory definitions and treatment of chlorine gas,...the Policy additionally defining a 'pollutant' as a material requiring a material safety data sheet[,] the specific allegations and admissions that its inhalation caused the Underlying Plaintiffs' physical harm, and the undisputed nature of chlorine gas as a dangerous and potentially deadly chemical[,] and/or the dictionary definitions of chlorine make Matcon and Ford City Borough, the appropriate precedents for the present action." (Docket Entry No. 25 at pp. 41-42).  For these reasons, Plaintiff argues that "this Court can itself determine this matter by

6

analyzing the pleadings, clear policy language, and the established understandings, classifications, and definitions of the nature of chlorine gas, without the need for resolution by a jury or an expert report." (Id. at p. 42).

Based on 35 P.S. 7307, Plaintiff also argues that Pennsylvania's adoption of a list of hazardous substances, which includes Chlorine, demonstrates that it is a pollutant. (Docket Entry No. 25 at p. 42). In addition, the Code of Federal Regulations 29 CFR 1910.1200(a), et seq., addresses safety data sheets and recognizes chlorine as toxic. (Id. at pp. 42-43). Moreover, "chlorine is included in the list of air contaminants found in 29 CFR 1910, Subpart Z – Toxic and Hazardous Substances, as a regulated air contaminant, Table Z-1 [website omitted], and attached as Appendix-8; and in 29 CFR 1910.119, Appendix A, among the list of toxic and reactive highly hazardous chemicals, attached as Appendix-9 [website omitted]." (Id. at p. 43). In further support, Plaintiff also emphasizes that the Environmental Protection Agency stated that "[c]hlorine is a potent irritant to the eyes, the upper respiratory tract, and lungs…Chronic (long-term) exposure to the chlorine gas in workers has resulted in repertory effects, including eye and throat irritation and airflow obstruction." (Id.). Similarly, Plaintiffs point to the Agency for Toxic Substances and Disease Registry's explanation of the adverse effects in humans exposed to chlorine. (Id. at pp. 43-44).

Plaintiff also sets forth the argument that this Court should take judicial notice of chlorine as a pollutant pursuant to Pa.R.E. 201(b)(2) and 45 Pa.C.S. 506. (Docket Entry No. 25 at pp. 44-45) (See also Horen v. Davis, 118 A. 22, 24 (1922); Rosenfeld v. Coleman, 19 Pa. D. & C. 2d 635, 642-43 (C.C.P. 1959); and Harkins v. Ferrero, 38 Pa. D. & C. 2d 412, 414 (C.C.P. Montco. 1965)). Based on the foregoing, Plaintiff argues that "[t]here is no reasonable question that, as a matter of accepted and undisputed science, chlorine gas is a potentially hazardous and toxic

7

material" and therefore, is an irritant or contaminant constituting a pollutant under the Policy. (Id. at pp. 45-46).

## 2. There is No Viable Reasonable Expectations Argument

Plaintiff claims that Tonkovic v. State Farm Mutual Auto. Ins. Co., 521 A.2d 920 (Pa. 1987), which Defendants have previously relied upon, is distinguishable from the case *sub judice*. (Docket Entry No. 25 at p. 46). Specifically, where the insurance agent that the Tonkovic insured dealt with was the insurance carrier's agent, Plaintiff contends that here, it is "clear and unequivocal: CSI, Slezak and Rosetti were all the Zymbloskys' agents...They were not Atlantic's agent and had absolutely no authority to act for Atlantic, or Atlantic's actual managing general agent, Aberdeen." (Id.).

Moreover, Plaintiff emphasizes that the Third Circuit in analyzing Tonkovic stated: "In the absence of an affirmative misrepresentation by the insurer or its agent about the contents of the policy, the plain and unambiguous terms of a policy demonstrate the parties' intent and they control the rights and obligations of the insurer and the insured." (Docket Entry No. 25 at pp. 46-47) (citing West v. Lincoln Benefit Life Co., 509 F.3d 160, 168-69 (3d Cir. 2007)). In light of this analysis, Plaintiff stresses that "there is nothing in the record that Atlantic, either directly or through Aberdeen, made any misrepresentations to CSI, Slezak or Rosetti about the scope of Atlantic's insurance coverage including pollution events." (Id. a tp. 47). In fact, the record shows: (1) Zymbloskys signed applications stating that exposure to chemicals was not part of the policy; (2) Zymbloskys had their agent CSI submit those applications to Aberdeen; (3) Aberdeen provided quotes to CSI; (4) the Atlantic insurance policies issued to Boots and Hanks had pollution exclusions; (5) CSI knew these exclusions were in the Atlantic policies year after year; (6) CSI reviewed the quotes and accepted the policies issued with the promised exclusions;

8

and (6) CSI did not raise any problem with the pollution exclusion to Aberdeen. (Id.). The foregoing facts demonstrate that "there is no support in the record for a reasonable expectations argument." (Id.).

Plaintiff further argues that Tonkovic is inapplicable because unlike in Tonkovic, neither the Zymbloskys nor anyone associated with their agent, CSI, requested insurance coverage from Atlantic or Atlantic's agent to cover the release of toxic chemicals. (Docket Entry No. 25 at pp. 47-48). More specifically, there is nothing in the record showing that (1) Atlantic or Aberdeen expressly promised the Zymbloskys or CSI that Boots and Hanks would receive that coverage, and then (2) later excluded such coverage via the total pollution exclusions, which is what essentially occurred in Tonkovic. (Id. at p. 48). In further distinction from Tonkovic, Plaintiff emphasizes that unlike the insured in Tonkovic, the insured here received the policies and quotes over a period of years that expressly included the pollution. (Id. at pp. 48-49).

As a separate basis to reject the reasonable expectations argument, Plaintiff emphasizes that the release of the toxic chemical at issue was caused by Weitsman, who was not a tenant or subtenant of Edward Jr. as Boots and Hanks, alone; nor was Weitsman carrying out part of Boots and Hanks' business when it was cutting open a cylinder filled with chlorine gas. (Docket Entry No. 25 at p. 49). For this reason, Plaintiff claims that the reasonable expectations argument that Defendants actually assert is that Edward Jr., as Boots and Hanks, had a reasonable expectation that Atlantic's policy would provide Boots and Hanks coverage for the release of toxic chemicals by another's tenant/subtenant on property shared with Edward Jr./Boots and Hanks, carrying out a wholly distinct business unrelated to Boots and Hanks' auto dismantling and sale of auto parts. (Id.).

9

Based on Edward III's testimony, "the Zymbloskys admit that they anticipated insurance coverage for Weitsman's conduct through an entirely different insurance policy, which they believe provided coverage to Edward Jr. and Gail Zymblosky as landlords; and potentially to Edward III as an additional insured." (Docket Entry No. 25 at p. 49). When obtaining the policy at issue, "CSI simply followed the same procedures and practices as it had in years past to obtain the same insurance coverage from Atlantic for Edward Jr./Boots and Hanks, using the same application format and representations, and receiving the same information that there was a pollution exclusion." (Id. at p. 50).

### 3. Punitive Damages Claims are Excluded Under the Policy

"There are numerous claims for punitive damages in the Underlying Complaint, and indemnification for punitive damages is clearly excluded under the Policy's plain language." (Docket Entry No. 25 at p. 51). Relying on Robson v. EMC Insurance Cos., 785 A.2d 507, 510 (Pa. Super. 2001), appeal denied, 796 A.2d 984 (2002), Plaintiff maintains that unambiguous policy exclusions for punitive damages will be upheld in court, and therefore, such claims made by the Underlying Plaintiffs must be excluded from coverage under Atlantic's Policy. (Id.).

### 4. There is No Duty to Defend

Citing to General Accident Ins. Co. of Am. V. Allen, 692 A.2d 1089, 1095 (Pa. 1997), Plaintiff contends that "[w]here the claim against the insured does not fall within an insurance policy's coverage, there is no duty to defend that insured against such a claim." (Docket Entry No. 51). Notably, the Policy "expressly provides by Policy endorsement AGL-056 1/08, 'LIMITATION ON DUTY TO DEFEND", that: 'Where there is no coverage under this policy, there is no duty to defend any insured.'" (Id.).

10

### B. Defendant-Houser's Response

#### 1. Atlantic's MFSJ Must Be Denied as Genuine Issue of Material Fact Remain in this Action Regarding Whether Chlorine is a Pollutant

The Houser Defendants contend that "it is premature to categorize the chlorine gas at issue in this matter as a pollutant." (Docket Entry No. 34 at p. 12). In support, Houser Defendants rely on the Superior Court's holding in Municipality of Mt. Lebonon v. Reliance Ins. Co., 778 A.2d 1228, 1234 (Pa. Super. 2001), which stated, "the definition of pollutant,...does not speak in terms of danger or harmful effects, but instead requires the court to determine whether in the context of this particular factual situation [chlorine gas] is an irritant or a contaminant." (Id.). Houser Defendants emphasize that, as noted by the Superior Court in Reliance Ins., "just because a substance is harmful does not render it a pollutant under the total pollution exclusion." (Id. at p. 13). For this reason, Houser Defendants conclude that "whether chlorine gas is a pollutant within the meaning of the policy exclusion is a matter requiring expert analysis sand opinion," which requires further discovery and ultimately is a question of fact to be decided by a jury. (Id.).

#### 2. The Total Pollution Exclusion in the Policy is Void as Against Public Policy

Relying on Heller v. Pennsylvania League of Cities and Municipalities, 613 Pa. 145 (Pa. 2011), Houser Defendants assert that the case *sub judice* similarly involves a policy exclusion that "renders the coverage purchased by the Zymblosky Defendants illusory and thus is void as against public policy." (Docket Entry No. 34 at p. 15). Specifically, Defendants claim that the exclusion exclude almost all potential claims by the Zymblosky Defendants because it "bars coverage for bodily injuries or property damage causally connected to 'the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any

11

time.'" (Id.) (citing Insurance Policy, attached as Exhibit E). Defendants stress that the Supreme Court in Madison Const. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100 (Pa. 1999) found that the element of movement is common to the terms "discharge, dispersal, seepage, migration, release or escape." (Id. at pp. 15-16). Accordingly, Defendants surmise that "any movement of a pollutant would trigger the pollution exclusion and bar coverage." (Id. at p. 16).

The Houser Defendants further point out that any substance regardless of form may be considered a pollutant under the definition set forth in the subject policy. (Docket Entry No. 34 at p. 16). As a result of this broad definition, "the policy includes a non-exhaustive list of materials to be included within the definition of pollutant," including "waste" defined as "material to be recycled, reconditioned, or reclaimed." (Id.). Because the Zymblosky Defendants' business involves the dismantling of automobiles and selling scrap metal and auto parts, the policy exclusion completely bars coverage as "every material on the premises would be considered waste as the term is defined in the policy." (Id. at pp. 16-17). Most notably, Defendant suggests that even scrap metal, which the Zymbloskys' entire business requires movement of, would be considered a pollutant under the exclusion policy. (Id. at p. 17). As a result, "almost all foreseeable injury or property damage would have been caused in part by the movement of waste/scrap metal on the property and therefore, be excluded from coverage pursuant to the total pollution exclusion." (Id.).

Furthermore, the Houser Defendants contend that the policy contains other exclusions that limit the coverage, including a Workers' Compensation exclusion and an Employer's Liability exclusion, barring coverage for any injuries suffered by Zymbloskys' employees. (Docket Entry No. 34 at p. 17). Moreover, the policy also contains an aircraft, auto, or watercraft exclusion and damage to property exclusion. (Id.). "In light of these exclusions, it is

12

clear that almost all conceivable injuries or property damage would be excluded from coverage under one or more of the subject exclusions contained within the subject policy, particularly the pollution exclusion." (Id.). Theoretically, Plaintiff could deny coverage for all claims under the policies pollutant exclusion because it could argue that any injury or property damage would not have occurred but for the movement of recycled, reconditioned, or reclaimed goods, i.e. any and all objects present on a salvage yard. (Id. at p. 18).

### 3. The Reasonable Expectations Doctrine Requires this Court to Deny Plaintiff's MFSJ

The Houser Defendants maintain that Plaintiff was aware that the Zymbloskys' business "necessarily requires the…escape of waste onto the land/premises which the Atlantic Casualty policy was meant to cover." (Docket Entry No. 34 at p. 20). "Despite this knowledge, the Atlantic Casualty policy does not provide any exception to an absolute bar of coverage that would preclude almost any claim made under the policy." (Id.). Although the Zymbloskys' purchased insurance and paid premiums to ensure they would be covered for liabilities that may arise out of the use of the premises as a salvage yard, "the application of pollution exclusion bars coverage for almost all potential liabilities that may arise out of the use of the land for the intended business purpose of dismantling and selling auto parts including scrap metal. (Id. at p. 21).

### a. Mr. Slezak was a Dual Agent Working for the Zymbloskys and Atlantic

Based on Joyner v. Harleysville Ins. Co., 574 A.2d 664, 668 (Pa. Super. 1990), the Houser Defendants claim that an individual may be a dual agent working both on behalf of the insured and the insurer, and the determination as to whether an individual is acting as an agent of another must be determined by the trier of fact. (Docket Entry No. 34 at p. 21).

13

The Houser Defendants contend that the evidentiary record contains sufficient facts for a jury to find that Mr. Slezak was an agent of both CSI and Atlantic. (Docket Entry No. 34 at p. 22). For example, Defendants maintain that the evidence shows that (1) Mr. Slezak and CSI collected the premium from the Zymbloskys for the policy issued by Atlantic, retained his commission and then paid the balance to Aberdeen; (2) Atlantic by and through its agent Aberdeen provided an insurance quote to CSI & Associates for $3,572.50 containing the cost of the premium, SL filing fee, policy fee, inspection fee, and tax; (3) the quote provided for a commission; (4) Zymbloskys paid the quoted price of $3,572.50 directly to CSI; and (5) CSI deducted its commission from the $3,572.50 and forwarded the remaining portion of the payment to Plaintiff. (Id. at pp. 22-23). Defendants claim that these facts show Plaintiff Atlantic paid Mr. Slezak for procurement of insurance, not the Zymbloskys. (Id. at p. 23).

Moreover, the Houser Defendants emphasize that Slezak's testimony demonstrates that he visited the Zymbloskys' property and walked/drove around the premises for the purpose of underwriting *for the insurance company*. (Docket Entry No. 34 at p. 23) (citing Slezak, Exh. H, at 17:4-16) (emphasis in the original). Significantly, the evidence of record shows that the insurance company charged the Zymbloskys for this inspection. (Id.). Therefore, Atlantic was charging a fee for the work performed by Slezak, suggesting that Slezak was an agent of Plaintiff rather than the Zymblosky Defendants. (Id.).

> **b.** **The Zymbloskys Reasonably Relied on the Representations made by Christopher Slezak, who was Acting as an Agent for Atlantic and Reasonably Expected that their Business was Covered**

The Houser Defendants maintain that Slezak knew the Zymblosky's were looking for insurance coverage of their salvage yard, was aware of the activities that took place as part of the salvage yard business and told the Zymblosky's that he would take care of their coverage.

14

(Docket Entry No. 34 at pp. 23-24). With regard to this coverage, Slezak informed the Zymbloskys only acts of terrorism were not covered. (Id. at p. 24). "Based on the representations made by Mr. Slezak and CSI associates, the Zymbloskys reasonably believed that they would be covered for any injury or damages resulting from the normal and inherent operations of a salvage yard business." (Id. at pp. 24-25).

**c.     The Zymbloskys Reasonably Relied on the Representations made by Atlantic and Reasonably Expected that their Business was Covered**

Even if Slezak and CSI are found not to be agents of Atlantic, the Houser Defendants assert that the evidence demonstrates that Atlantic itself represented to the Zymbloskys that they would be fully covered. (Docket Entry No. at p. 25). Specifically, the Zymbloskys' application for insurance discloses the nature of their salvage yard business, and Mr. Slezak as well as someone from the insurance company inspected the property, who Edward III told about the salvage yard and the operations that took place as part of the business. Based on these facts, Defendants argue that Atlantic was aware of the operations of the salvage yard prior to issuing the policy. (Id. at pp. 25-26).

Overall, the Houser Defendants conclude that Plaintiff's Motion for Summary Judgment should be denied because (1) the Zymbloskys paid premiums and reasonably expected to be covered for all inherent operation of the salvage yard business; and (2) the representations made by Plaintiff Atlantic and its agents, including Slezak led to the Zymbloskys reasonable belief they would be covered. (Docket Entry No. at p. 27). Based on Rourke v. Pennsylvania National Mutual Casualty Insurance Co., 2015 WL 1912914 at *10 (Pa. Super. 2015), Defendants conclude that the Zymbloskys' expectations and the reasonableness of those expectations are issues of fact to be determined by a jury and cannot be resolved on a Motion for Summary Judgment. (Id. at p. 27).

15

## C. Defendant-Zymblosky's Response

"Atlantic's policy creates a duty on the part of Atlantic to defend the Zymblosky Defendants from a suit seeking damages for bodily injury that is caused by an occurrence that takes place in the coverage territory. (Docket Entry No. 30 at p. 3) (citing to Atlantic's Complain attached as Exhibit "B"). Relying on various case law including Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888 (Pa. 2006), Erie Ins. Exch. V. Transamerica Ins. Co., 533 A.2d 1363 (Pa. 1987), Gedeon v. State Farm Mut. Auto. Ins. Co., 188 A.2d 320 (Pa. 1963), Casper, 184 A.2d 247, American and Foreign Insurance Company, et al v. Jerry's Sport Center, Inc., et al, 2 A.3d 526, 540-541 (Pa. 2010), etc., Zymblosky Defendants generally contend that an insurer's duty to defend is broader than its duty to indemnify and if the complaint possibly falls within the policy's coverage then the insurance company is obliged to defend. (Id. at pp. 3-4).

The Zymblosky Defendants maintain that the factual allegations in the Underlying Complaint encompass a cause of action that is "actually or potentially within the scope of the policy." (Docket Entry No. 30 at p. 4). They further emphasize that the Underlying Plaintiffs allege negligence regarding their failure to properly monitor, supervise and train. (Id. at pp. 4-5). "It is not the actual details of the injury but the nature of the claim which determines whether the insurer is required to defend," and "[t]he nature of the claim here is negligence and claims of negligence may fall within the policy coverage." (Id. at p. 5).

16

## D. Plaintiff-Atlantic's Reply

### 1. There is No Dual Agency that Can Allow the Policy to be Rewritten

#### a. There is no factual basis for dual agency

The Zymblosky Defendants admitted in their interrogatory answer number 6 that "Christopher Slezak was the insurance agent for the Zymbloskys." (Docket Entry No. 37 at p. 1; citing Exhibit "G"). In addition, Mr. Slezak's testimony made clear that he is an insurance broker, and therefore an agent of the insureds. (Id.). Specifically, in response to counsels question whether as an agent he was working for the insured, Mr. Slezak answered, "Um-hum, yes." (Id.; citing Slezak Deposition at p. 9). Moreover, Plaintiff cites to similar evidence supporting its contention that Slezak was not an agent of Atlantic, including: (1) Rosetti's testimony that CSI could not bind insurance; (2) Slezak's testimony that Aberdeen was Atlantic's agent, and he was Zymbloskys' agent; (3) Rosetti's testimony that Mr. Downie at Aberdeen was an insurance underwriter; (4) Slezak's testimony that he walked around Zymblosky's lot with Edward Zymblosky III to provide information on an insurance application, which would then be used by the insurance company's underwriters as would any other information provided in response to an application; and (5) With regard to his visit to Zymblosky's property, Slezak testified, "I'm not an inspector either. I just – I'm an information gatherer, I should say." (Id. at pp. 2-3).

Plaintiffs maintain that Defendants' contention that Slezak was Atlantic's agent because he questioned Edward III regarding information needed on the insurance application is insufficient. (Docket Entry No. 37 at p. 3). If the Court were to accept this argument, then every insurance broker looking to obtain insurance for its clients would automatically become an

17

underwriting agent of the insurer ultimately issuing the policy, which is an untenable and unrecognized theory in the controlling case law. (Id. at pp. 3-4).

In response to Defendant's contention that Slezak was paid an inspection fee in 2010 to walk around the property and fill out an application in 2006 is "incredible on its face." (Docket Entry No. 37 at p. 4). Moreover, Defendants mischaracterize Slezak's 2006 actions as some sort of formal inspection independent of his normal role as an insurance broker. (Id.). In fact, Slezak testified he was there to gather information for the insurance application, not as an inspector. (Id.). Furthermore, Slezak's 2006 visit was to gather information for a 2006 policy, which was not for Atlantic, but for a different insurer. (Id.).

**b.** **There is no basis to assert apparent authority**

Plaintiff emphasizes that both the Zymbloskys and Slezak admitted that Slezak was the Zymbloskys' agent, and that the Zymbloskys had no direct communications with Aberdeen or Atlantic. (Docket Entry No. 37 at pp. 6-8; citing Edward III Deposition at pp. 9-11, 20-21, 32-33, 31 attached as Exhibit "J"). Similarly, Edward Jr. also testified that he had no dealings with Atlantic or Aberdeen. (Id. at pp. 8-9; Edward Jr. Deposition at p. 27). The Zymblosky Defendants interrogatory answers also demonstrate that there were no communications between them and any person concerning insurance coverage for pollutants. (Id. at pp. 9-10; Edward III Deposition at pp. 21-22).

In addition, Plaintiff maintains that the Houser Defendants cannot show any evidence that Atlantic communicated with the Zymbloskys. Specifically, Atlantic did not make them reasonably believe that Atlantic had granted Slezak authority to act as its agent for issuing or binding the Policy, or that Slezak was to perform Aberdeen's or Atlantic's role in underwriting risk or defining the nature of coverage. (Docket Entry No. 37 at p. 10). Instead, the record

18

clearly shows the Zymbloskys had no contact with the insurer, and therefore, it is impossible to make a case of apparent authority on the record that the Zymbloskys reasonably relied on some communication from Atlantic in coming to believe that Atlantic had made Slezak its agent. (Id.).

Moreover, Plaintiff stresses that Defendants' reliance on Joyner is misplaced. "[A]t most, Joyner stands for the proposition that an insurance agent may have dual agency for the purpose of receiving premiums on behalf of the insurer, and whether its receipt of the premiums timely binds the policy. (Docket Entry No. 37 at pp. 10-11). "Joyner is not a case that stands for the proposition that the producer can act as the insurer's agent to bind the insurer regarding substantive provisions of insurance coverage simply because it collected premiums from the insured and paid them to the insurer's agent." (Id. at p. 11).

Furthermore, the duly authorized representative is Aberdeen, the general agent, not CSI and/or Mr. Slezak as is demonstrated by Aberdeen's appearance as the general agent and the counter signature of Thomas Downie of Aberdeen on the Policy's Common Declaration Page. (Docket Entry No. 37at p. 12). Plaintiff concludes by reiterating that the Houser Defendants are making claims for injuries that occurred when a subtenant of the Zymbloskys was performing its own business operations, not Boots and Hanks. (Id. at pp. 12-13). Slezak obtained the insurance from Atlantic in 2007, and the subtenant was not in place until many years after. (Id. at p. 13). Therefore, "[i]t is irrational to suggest that Mr. Slezak sought to obtain insurance for Boots and Hanks to protect against the conduct of subtenants of non-insured parties (Gail and Edward, Jr.), and that he did so years or months before the subtenant moved in." (Id.).

19

**2. <u>Heller</u> does not Support the Underlying Plaintiffs' Argument and the Policy is Not Illusory Simply Because the Pollution Exclusion Precludes Coverage Concerning Chlorine Gas**

**a.    The Policy is Not Illusory**

Plaintiffs emphasize that the pollution exclusion at issue does not preclude "almost all claims by the Zymblosky Defendants rendering the policy useless." (Docket Entry No. 37 at p. 15). Plaintiff challenges Defendants theory by setting forth two examples where there would be coverage under the Policy, including:  (1) "a customer's slip and fall personal injury due to the irregular physical condition of the premises surface area;" (2) customer injured by a vehicle part while standing too close to demolition work.  (<u>Id.</u>).  "Coverage for such acts has nothing to do with any pollutant, and there is no way in which these events could encompass the term pollutant as the causal factor in the harm." (<u>Id.</u>).

In response to Defendants theory that the word "waste" in the exclusion would encompass all of Zymblosky Defendants' activities, Plaintiff point out that there is no issue here about whether scrap metal from cars is waste, and therefore not to be considered.  (Docket Entry No.37  at p. 16).  "The Houser Defendants postulate a meritless straw man argument, not asserted by Atlantic, as a red herring about the pollution exclusion's application to avoid the consequences of that exclusion's plain, but more limited, application." (<u>Id.</u>).

**b.    <u>Heller</u> is not Applicable as it Addresses Circumstances Where Policy Language would have Eliminated All Coverage and Made the Policy Illusory**

Plaintiff argues that <u>Heller</u> is inapplicable to the present case because here, "the Total Pollution Exclusion in Atlantic's insurance policy does not make any and all coverage a practical impossibility, as was the case in <u>Heller</u>. (Docket Entry No. 37 at pp. 17-18).  Citing <u>TIG Ins. Co. v. Tyco  International Ltd.</u>, 919 F. Supp. 2d 439, 466 (M.D. Pa. 2013), and <u>ACE Capital Ltd. V.</u>

20

Morgan Waldon Ins. Mgmt., LLC, 832 F. Supp. 2d 554 (W.D. Pa. 2011), Plaintiff points out that courts applying Pennsylvania law have made clear that an insurance policy is not illusory because it has broad exclusions, so long as there is some effective protection to the insured. (Id.).

In response to the Houser Defendants' reference to certain policy exclusions that have no relevance to this case, Plaintiff stresses that workers' compensation, auto, and owned property exclusions are typically included in commercial general liability policies. (Docket Entry No. 37 at p. 20-21). Plaintiffs state that these exclusions exist "because these kinds of risks are to be addressed in different kinds of insurance policies, as Boots and Hanks and Gail and Edward, Jr. have done." (Id. at p. 21).

### 3. The Phrase "Salvage Yard" Does not Provide Boots and Hanks with Universal Coverage; Nor do the Applications Alone Define the Scope of Coverage

Plaintiff maintains that the phrase "Salvage Yard" on the Common Policy Declarations page of the Policy does not equate to a reasonable expectation that Boots and Hanks would be covered for pollution or anything else the Houser Defendants or Zymbloskys can conceive. (Docket Entry No. 37 at p. 22). Plaintiff contends that on the same page upon which the Defendants rely to argue that the "salvage yard" phrase provides Boots and Hanks with total coverage, Boots and Hanks was plainly informed that the Policy included the conditions, coverage forms, and endorsements within the Policy, which includes the Total Pollution Exclusion Endorsement. (Id.). "Atlantic had not promised to provide some ubiquitous coverage for salvage yards and then at some later date limited that promise of universal coverage when the policy was actually issued." (Id. at p. 23). Moreover, Boots and Hanks received policies and quotes referencing the pollution exclusion for years and also, indicated on its applications for

21

insurance that chemicals were not used in its business. (Id.; See insurance applications in 2009 and 2010, attached as exhibits "K" and "L", in the "General Information" section, box 3 is marked no there are no flammable or chemical exposures). Furthermore, Slezak never discussed chemical exposures with the Zymbloskys, nor did he communicate anything about coverage for pollutants to Aberdeen/Atlantic. (Id. at p. 24). Plaintiff concludes with its argument that "simply submitting an insurance application cannot form the basis of a reasonable expectations argument," because an application stating the type of work performed by the insured "is not the equivalent of a promise from the insurer to provide universal insurance to the insured," which is what occurred in Tonkovic. (Id. at p. 25).

### 4. No Argument is offered that Punitive Damages are Covered

"The Houser Defendants' fourth question presented asserts that Atlantic has a duty to defend and indemnify the Zymbloskys for punitive damages. [citation omitted] In the text of their Brief, however, the Houser Defendants offer no argument supporting this extraordinary position. Atlantic relies upon its original Brief to address this issue." (Docket Entry No. at p. 26).

### III. STANDARD OF REVIEW

Pursuant to the Pennsylvania Rules of Civil Procedure, any party may move for summary judgment in whole or in part as a matter of law after all relevant pleadings are closed. Pa.R.C.P. 1035.2; See also Coleman v. Coleman, 199, 663 A.2d 741, 743 (Pa. Super.1995). The court must enter judgment "whenever there is no genuine issue of any material fact as to a necessary element of the cause of action." Sevast v. Kakouras, 915 A.2d 1147, 1152 (Pa. 2007). In making this determination, the court also must review the record in the light most favorable to the nonmoving party. Westfield Ins. Co. v. Astra Foods Inc., 2016 PA Super 31 (2016) (citing Hovis v. Sunoco, Inc., 64 A.3d 1078, 1081 (Pa. Super. 2013)). Accordingly, all doubts as to the

22

existence of a genuine issue of material fact must be resolved against the moving party. <u>Richard Allen Preparatory Charter Sch. v. Sch. Dist. of Philadelphia</u>, 123 A.3d 1101, 1108 (Pa. Cmwlth. 2015) (<u>citing</u> <u>Royral v. Southeaster Pennsylvania Transportation Authority</u>, 10 A.3d 927, 929 n. 2 (Pa. Cmwlth. 2010)).

The non-moving party bears the burden of proof to establish sufficient evidence on issues essential to his case such that a jury could return a verdict in his favor. <u>Keystone Aerial Surveys, Inc. v. Pennsylvania Prop. & Cas. Ins. Guar. Ass'n</u>, 777 A.2d 84, 89 (Pa. Super. 2001), <u>aff'd</u>, 574 Pa. 147, 829 A.2d 297 (2003). "Thus, a record that supports summary judgment will either (1) show the material facts are undisputed or (2) contain insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the jury." <u>Nat'l Cas. Co. v. Kinney</u>, 90 A.3d 747, 752 (Pa. Super. 2014) (<u>citing</u> <u>Grandelli v. Methodist Hosp.</u>, 777 A.2d 1138, 1143 (Pa. Super. 2001)); <u>See</u> <u>also</u> Pa.R.C.P. 1035.2 *Note*.

## IV. ISSUES

1. **Whether Chlorine is a Pollutant Under the Policy's Total Pollution Exclusion Endorsement, Precluding Plaintiff Atlantic's Duty to Defend or Indemnify the Zymblosky Defendants in the Underlying Action?**

2. **Even if the Total Pollution Exclusion Applies, Should it be Disregarded Under the Reasonable Expectations Doctrine?**

3. **Whether the Total Pollution Exclusion Renders the Coverage Illusory and Therefore, Void as Against Public Policy?**

4. **Whether Plaintiff Atlantic has a Duty to Defend and Indemnify the Zymblosky Defendants for Punitive Damages in the Underlying Action?**

## V. DISCUSSION

### A. Chlorine is a Pollutant Under the Policy's Total Pollution Exclusion Endorsement, Which Exempts Plaintiff Atlantic from its Duty to Defend or Indemnify the Zymblosky Defendants in the Underlying Action

In Pennsylvania, the interpretation of an insurance contract is a question of law to be properly resolved by the trial judge, who must "ascertain the intent of the parties as manifested by the terms used in the written insurance policy." Babcock & Wilcox Co. v. Am. Nuclear Insurers, 131 A.3d 445, 456 (Pa. 2015); See also American and Foreign Ins. Co. v. Jerry's Sport Center, Inc., 2 A.3d 526, 540 (Pa. 2010); and Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286, 290 (Pa. 2007). When interpreting a policy, "[w]ords of common usage ... are to be construed in their natural, plain and ordinary sense ... and we may inform our understanding of these terms by considering their dictionary definitions." Municipality of Mt. Lebonon v. Reliance Ins. Co., 778 A.2d 1228, 1232 (Pa. Super. 2001). Furthermore, the court must give effect to the plain language of the contract when the language is clear and unambiguous. Lexington Ins. Co. v. Charter Oak Fire Ins. Co., 81 A.3d 903, 908 (Pa. Super. 2013). If the language is vague however, the policy is to be construed in favor of the insured to further the contract's purpose of indemnification, as the insurer has the advantage of drafting the policy and controlling coverage. Cigna Corp. v. Executive Risk Indem., Inc., 111 A.3d 204, 211, appeal denied, 126 A.3d 1281 (Pa. Super. 2015) (citing Lexington, 81 A.3d at 908).

Trial courts must keep in mind that an "insurer's duty to defend is broader than its duty to indemnify," when interpreting an insurance contract. Nationwide Mutual Ins. Co. v. Esgro, 2011 WL 2294247 (Lacka. Co. 2011) (Nealon, J.) (citing Telecommunications Network and Design v. Brethren Mut. Ins. Co., 5 A.3d 331, 335 (Pa. Super. 2010)). "An insurer is obligated to defend its insured if the factual allegations of the complaint on its face encompass an injury

24

that is actually or potentially within the scope of the policy." Am. & Foreign Ins. Co., 2 A.3d at 541; See also CDL, Inc. v. Certain Underwriters At Lloyd's of London, 2014 WL 10914098, at *3 (Pa. Super. 2014). Therefore, whether or not an insurer has a duty to defend turns on "the potential, rather than the certainty of a claim falling within the insurance policy…" Old Forge Borough v. Hous. & Redevelopment Ins. Exch., 2015 WL 5314617, at *6 (Pa. Comwlth. 2015) (quoting Am. & Foreign Ins. Co., 2 A.3d at 540-41).

It is soundly within this Court's discretion to determine whether to give effect to the policy provision at issue, the Total Pollution Exclusion Endorsement, which will bar coverage and relieve Plaintiff from its duty to defend. Based on the foregoing case law, the first step in the Court's analysis is to determine whether the Total Pollution Exclusion is clear and unambiguous. The relevant portion of the Pollution Exclusion in the Atlantic Policy plainly provides:

**TOTAL POLLUTION EXCLUSION ENDORSEMENT**

Exclusion f. under paragraph 2, Exclusions of Section 1 – Coverage A – Bodily Injury and Property Damage Liability is replaced by the following:

This **insurance does not apply to**:

f. **Pollution**

> (1) "Bodily injury" … which would not have occurred in whole or in part **but for** the actual, alleged or threatened **discharge, dispersal, seepage, migration, release or escape of "pollutants"** at any time."

(Docket Entry No. 23 at ¶ 3) (emphasis added).

After applying the definitions of the plain terms used in this provision and considering the Underlying Complaint is undisputedly based on bodily injuries caused by the Underlying Plaintiffs' exposure to "toxic chlorine gas," this Court should find this provision applicable if it

25

finds "chlorine" to be a "pollutant" as defined by the policy. The subject policy defines "pollutants" to mean:

> "...solid, liquid, gaseous, or thermal irritant or contaminant or all material for which a Material Safety Data Sheet is required pursuant to federal, state, or local laws, where ever discharged, dispersed, seeping, migrating or released, including onto or into the air or any air supply, water or any water supply or land, including but not limited to petroleum, oil, heating oil, gasoline, fuel oil, carbon monoxide, industrial waste, acid, alkalis, chemicals, waste, treated sewage; and associated smoke, vapor, soot and fumes from said substance. Waste includes material to be recycled, reconditioned or reclaimed."

(Docket Entry No. 23 at ¶ 3). The Houser Defendants contend that "it is premature to categorize the chlorine gas at issue in this matter as a pollutant," because in Reliance, supra the Superior Court found, "the definition of pollutant,...does not speak in terms of danger or harmful effects, but instead requires the court to determine whether in the context of this particular factual situation [chlorine gas] is an irritant or a contaminant." Ultimately, the Houser Defendants believe that "whether chlorine gas is a pollutant within the meaning of the policy exclusion is a matter requiring expert analysis and opinion," which requires further discovery and ultimately is a question of fact to be decided by a jury.

In Reliance, a municipality brought an action for declaratory judgment that the insurer had a duty to defend and indemnify the municipality against negligence and gross negligence claims. Municipality of Mt. Lebonon v. Reliance Ins. Co., 778 A.2d 1228 (Pa. Super. 2001). On appeal from the trial court's entry of judgment on the pleadings in favor of the insurer, the Superior Court reversed because the "evidence was insufficient to prove that natural gas was unambiguously a pollutant as defined by a commercial general liability policy." Id. The policy provision at issue stated:

¶ 17 This insurance does not apply to:

26

> **bodily injury** or **property damage** which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants** at any time.
>
> Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fume, acids, alkalis, chemicals or waste material....

Id. at 1233. The Superior Court stressed its reversal was based on the fact that the evidence before it consisted only of Mt. Lebanon's arguments that "the federal Comprehensive Environmental Response, Compensation and Liability Act ("CERLA") specifically excludes natural gas from the definitions of a "pollutant or contaminant" as well as its state equivalent, the Pennsylvania Hazardous Sites Cleanup Act, which similarly excludes natural gas from its definitions of a "contaminant" or "hazardous substance." Id. at 1233-34.

Reliance is clearly distinguishable and thus, inapplicable to the case *sub judice*. First, in Reliance, the Superior Court reversed the trial court's entry of judgment on the pleadings. Here, the case is at the summary judgment stage where discovery has been conducted and thus, the factual record is more fully developed. In addition, the only evidence before the Superior Court in Reliance consisted of federal and state definitions that explicitly excluded the natural gas at issue from the policy's definition of "pollutant or contaminant." Here, Defendants failed to present similar evidence demonstrating why chlorine gas should not be considered a pollutant or contaminant as defined by Atlantic's policy. See also Matcon Diamond, Inc. v. Penn Nat. Ins. Co., 815 A.2d 1109, 1114 0(Pa. Super. 2003) (distinguishing its holding from its prior holding in Reliance because the dictionary definition of carbon monoxide as a poisonous gas, combined with its well-known toxic effects and its status as a regulated pollutant under state and federal law demonstrate that carbon monoxide was unambiguously a pollutant under the terms of the subject policy).

27

In fact, the only evidence presented to this Court favors defining chlorine as a pollutant. For example, Plaintiff presented evidence including: (1) dictionary definitions of chlorine state that "chlorine is a gaseous chemical agent which elicits an inflammatory response"; (2) the Sixth Circuit in U.S. Fidelity and Guaranty Co., supra found that chlorine is a pollutant within the meaning of the policy at issue and that the bodily injury did arise from a discharge of this pollutant; (3) federal/state statutes and regulations define and treat chlorine gas as a pollutant; (4) the Policy defines a 'pollutant' as a material requiring a MSDS, which chlorine gas requires; (5) the Underlying Complaint makes specific allegations and admissions that its inhalation caused the Underlying Plaintiffs' physical harm; and (6) it is undisputed that chlorine gas is a dangerous and potentially deadly chemical. For these reasons, this Court finds that chlorine gas is a potentially hazardous and toxic material. Therefore, chlorine is an irritant or contaminant constituting a pollutant under the Policy.

## B. The Reasonable Expectations Doctrine Is Inapplicable and Does Not Void the Total Pollution Exclusion Endorsement in the Policy

### 1. Mr. Slezak's alleged deception did not cause the Zymbloskys to reasonably believe the Policy covered injuries due to pollutant exposure

When considering coverage provided within an insurance policy, the reasonable expectation of the insured is the focal point of the transaction. Collister v. Nationwide Life Ins. Co., 388 A.2d 1346, 1353 (Pa. 1978) (citing Beckham v. Travelers Ins. Co., 225 A.2d 532, 537 (Pa. 1967)). This is to protect the insured because their expectations are largely created by the insurance industry by using "lengthy, complex, and cumbersomely written applications, conditions receipts, riders, and policies..." Collister, 388 A.2d at 1353. Such actions force the insured to rely on the oral representations of the insurance agent, which may or may not accurately reflect the contents of the policy, and therefore, the insurer benefits from the insured's

28

lack of comprehension. Id. Accordingly, the court must consider the insured's reasonable expectations regarding coverage by examining the dynamics of the insurance transaction, the advantages gained by the insurer when the premium is paid at the time of application, and whether there is comparable benefit in return to the insured. Tonkovic v. State Farm Mut. Auto. Ins. Co., 521 A.2d 920, 926 (Pa. 1987) (citing Collister, 388 A.2d at 1353-54).

In light of this authoritative case law, Defendants' contention that the reasonable expectation doctrine should apply in this case "would entail a substantial expansion of the reasonable expectations doctrine, heretofore applied in very limited circumstances." Madison Const. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 109, n. 8 (Pa. 1999) (declining to review party's contention that the reasonable expectations of the insured must be considered because it failed to include this theory in its argument or in its petition for allowance of appeal); See also Collister, 388 A.2d at 1346 (applying the reasonable expectation doctrine to protect non-commercial insured from policy terms not readily apparent), *cert. denied,* 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 55 (1979); and Tonkovic, 521 A.2d at 920 (applying the reasonable expectation doctrine to protect non-commercial insured from deception). "[U]nder Pennsylvania law, mere assertions that a party expected coverage will not ordinarily defeat unambiguous policy language excluding coverage." Matcon, 815 A.2d 1109 at 1115.

Plaintiff was correct in distinguishing the Pennsylvania Supreme Court's use of the reasonable expectation doctrine in Tonkovic from the present case. In Tonkovic, the insurance agent that the insured dealt with was the insurance carrier's agent. Plaintiff contends that here, however, it is clear that CSI, Slezak and Rosetti were all the Zymbloskys' agents, not Atlantic's agents. CSI, Slezak and Rosetti had absolutely no authority to act for Atlantic, or Atlantic's actual managing general agent, Aberdeen. Furthermore, unlike in Tonkovic, there is nothing in

29

the record that Atlantic, either directly or through Aberdeen, made any misrepresentations to CSI, Slezak or Rosetti about the scope of Atlantic's insurance coverage including pollution events.

This case is more aligned with the Superior Court's decision in Matcon. In Matcon, the insured brought declaratory judgment action against its insurer, seeking determination that insurer had a duty to defend and indemnify the insured in the underlying action brought by a subcontractor for injuries sustained after being overcome by carbon monoxide fumes at work. Matcon, 815 A.2d at 1111. The insured argued that a genuine issue of material fact existed as to whether it reasonably expected coverage for the underlying accident. Id. at 1114. The Court declined to apply the doctrine, however, because the record reflected that the insured "**did not specifically request or bargain for any particular pollution coverage or pollution exclusion,**" and thus, "did not have any particular expectation regarding the scope of the pollution exclusion that was included in the policy." Id. at 1114-15 (emphasis added).

In finding that this contention failed, the Superior Court stressed "...generally, courts cannot invoke the reasonable expectation doctrine to create an ambiguity where the policy itself is unambiguous." Matcon, 815 A.2d at 1114 (2003) (citing Williams v. Nationwide Mut. Ins. Co., 750 A.2d 881, 886 (Pa.Super.2000)). Notably, the Superior Court further emphasized, "Our Supreme Court has identified only two limited exceptions to this principle: (1) Protecting non-commercial insureds from policy terms which are not readily apparent; and (2) protecting non-commercial insureds from deception by insurance agents. Id. (citing Madison, 735 A.2d at 109 n. 8; Tonkovic, 521 A.2d at 920; and Collister, 388 A.2d at 1346).

Here, the simple terms of the policy demonstrate that there is no ambiguity in its exclusion of coverage for bodily injury caused by a pollutant. In addition, the evidence of record

30

shows the Pollution Exclusion is plainly set forth in the policy under a section entitled, "TOTAL POLLUTION EXCLUSION ENDORSEMENT," which unmistakably states, "This insurance does not apply to: Pollution."

Moreover, the alleged misrepresentations made by Slezak to the Zymbloskys about their insurance policy do not rise to the type of deception required to apply the doctrine pursuant to Pennsylvania case law. Specifically, the evidence shows that the Zymbloskys **"did not specifically request or bargain for any particular pollution coverage or pollution exclusion,"** much like the insured in <u>Matcon</u>. Accordingly, it is very unlikely that the Zymbloskys possessed any particular expectation regarding the scope of the pollution exclusion that was included in their policy. Therefore, the reasonable expectation doctrine cannot be relied upon by Defendants in this case.

### 2. Mr. Slezak is not an agent of Atlantic

Even assuming arguendo that Mr. Slezak's actions were sufficiently deceptive to trigger the reasonable expectation doctrine in this case, Mr. Slezak was an agent of CSI and the Zymbloskys, not Atlantic. Ordinarily, a jury decides whether a principal-agent relationship exists within a set of facts, but where the facts giving rise to the relationship are not in dispute, the question is one which is properly decided by the court. <u>Joyner v. Harleysville Ins. Co.</u>, 574 A.2d 664, 668 (Pa. Super. 1990) (<u>citing</u> <u>Breslin by Breslin v. Ridarelli</u>, 454 A.2d 80 (Pa. Super. 1982)). A principal-agent relationship may exist through apparent authority **"where a principal, by words or conduct, leads people with whom the alleged agent deals to believe that the principal has granted the agent the authority** he or she purports to exercise." <u>Id.</u> at 667 (emphasis added).

Alleged misrepresentations or negligence on part of an insurance agent is not imputable to insurers where there is no evidence that the agent was acting under the apparent authority of the insurers with whom coverage was placed. Taylor v. Crowe, 282 A.2d 682 (Pa. 1971). Neither is such wrongdoing imputable where the insured testified that it relied on the agent to obtain proper insurance, used agents for all their coverage, and were not concerned about where the insurance was placed. Id. In fact, "[w]here a person desiring to have his property insured applies not to any particular company or its known agent, but to an insurance broker, permitting him to choose which company shall become the insurer, a long line of decisions has declared the broker to be the agent of the insured; not the insurer." Joyner, 574 A.2d at 668 (citing Taylor, 282 A.2d at 683 (quoting Taylor v. Liverpool, 68 Pa.Super. 302, 304 (1917))). Accordingly, an insurance broker/agent may have acted on behalf of the insurer in negotiations between the insurer and the insured, so as to be deemed the agent of the insurer, **only when there is "some evidence of an authorization, or some fact from which a fair inference of an authorization by the company might be deduced to make an insurance broker the agent of the company."** Taylor, 282 A.2d at 683-84 (emphasis added).

The Houser Defendants reliance on Joyner is misplaced. In Joyner, the Supreme Court held that the broker was an agent of the insurer for the purposes of paying premiums. Here, the issue does not involve alleged missed premium payments, like in Joyner, but rather, involves alleged misrepresentations made by the broker during negotiations regarding coverage, like in the earlier Supreme Court case, Taylor v. Crowe. Much like in Taylor, the evidence in this case demonstrates that the insureds/Zymbloskys completely relied on the broker/Slezak for obtaining liability coverage for their work in the salvage yard, who in turn, told the Zymbloskys that he would "take care of everything." Again, similar to Taylor, there is no evidence of authorization

32

by Atlantic or Aberdeen for Mr. Slezak and/or CSI to act as their agent to make them liable for the latter alleged misrepresentations.

Based on the foregoing case law and analysis, Defendants' contention regarding the reasonable expectation doctrine fails. Under Matcon, the Zymbloskys failure to specifically request for pollution coverage as well as the alleged misrepresentations made by Mr. Slezak, do not rise to the type of deception required to apply the reasonable expectation doctrine. Under Taylor, it is clear based on the facts that Mr. Slezak was an agent of the Zymbloskys, not Atlantic, when he made the alleged misrepresentations concerning insurance coverage. Therefore, the reasonable expectation doctrine does not apply in this case.

### C. The Total Pollution Exclusion Neither Renders the Coverage Illusory, Nor Contravenes Public Policy

"Under established principles of contract law, a court shall refuse to enforce a term of an agreement if the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms." Sunbeam Corp. v. Liberty Mut. Ins. Co., 33 Pa. D. & C.4th 34, 50 (Allegheny Co. 1996) (citing Restatement (Second) of Contracts § 178; and Central Dauphin School District v. American Casualty Company, 426 A.2d 94 (Pa. 1981)). Whether public policy considerations outweigh the validity of an insurance exclusion depends upon the factual circumstances present in each case. Heller v. Pennsylvania League of Cities & Municipalities, 32 A.3d 1213, 1223 (Pa. 2011); See also Paylor v. Hartford Ins. Co., 640 A.2d 1234, 1240 (Pa. 1994). More specifically with regard to insurance policy provisions violating public policy, the Pennsylvania Supreme Court has stated:

> Generally, courts must give plain meaning to a clear and unambiguous contract provision unless to do so would be contrary to a clearly expressed public policy. Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. As the term public policy is vague, there ***must be found definite indications in the law of the***

33

*sovereignty to justify the invalidation of a contract as contrary to that policy. Only dominant public policy would justify such action.* In the absence of a plain indication of that policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, the [c]ourt should not assume to declare contracts contrary to public policy. The courts must be content to await legislative action.

It is only **when a given policy is so obviously for or against the public health, safety, morals or welfare** that there is a **virtual unanimity of opinion** in regard to it, that a court **may constitute itself the voice of the community** in so declaring that the contract is against public policy.

Westfield Ins. Co. v. Astra Foods Inc., 2016 PA Super 31 (2016) (emphasis added) (citing Heller v. Pennsylvania League of Cities & Municipalities, 32 A .3d 1213, 1220–21 (Pa. 2011)).

An exclusion provision in an insurance policy may be found void as against public policy if the subject provision is found to be illusory. Heller, 32 A.3d at 1213. The relevant inquiry regarding illusory provisions in insurance policies is "whether a particular coverage provision is swallowed-up by an exclusion, not whether the policy as a whole provides some degree of coverage despite the existence of an exclusion." TIG Ins. Co. v. Tyco Int'l Ltd., 919 F. Supp. 2d 439, 466 (M.D. Pa. 2013), amended (Apr. 8, 2013) (quoting Great N. Ins. Co. v. Greenwich Ins. Co., 2008 WL 2048354 (W.D. Pa. 2008); See *also* Westfield Ins. Co. v. Astra Foods Inc., 2016 PA Super 31 (2016).

Regarding its public policy argument, Defendants primarily rely on Heller. In Heller, an officer injured in a work-related traffic accident sued the municipal insurer, seeking declaration that the insurance policy's provision, which excluded from the underinsured motorist (UIM) coverage a claim by an individual eligible for workers' compensation benefits, was against public policy. Heller v. Pennsylvania League of Cities & Municipalities, 32 A.3d 1213 (Pa. 2011). Pennsylvania's Supreme Court found that this exclusion was against public policy and therefore, void. Id. at 1223. The Court reasoned that coverage purchased by the insured was illusory

34

because the insured paid a premium for UIM coverage to provide additional protection to its employees who operate vehicles, but the subject exclusion denied UIM benefits to anyone who is eligible for workers' compensation. Id. Accordingly, the Court stressed that the insurer essentially sold the insured additional coverage at a higher premium rate that would not attach by virtue of the exclusion. Id. Notably, the Court stated that "[d]espite its claim that the coverage is not illusory, Penn PRIME has not presented this Court with an instance under which coverage will attach such that it would be required to pay UIM benefits." Id. at 1225. Additionally, the Court itself could not envision a scenario where the coverage would meaningfully apply to its intended beneficiaries. Id.

Unlike Heller, the subject exclusion at issue in this case does not bar coverage for all possible claims. While the insurer in Heller was unable to describe a situation where there would be coverage, Plaintiff in this case described two plausible examples where there would be coverage under the Policy. Moreover, Plaintiff's contention that there is no issue here about whether scrap metal from cars is waste, and therefore should not be considered, is more compelling than Defendants' futile theory that the word "waste" in the exclusion would encompass all of Zymblosky Defendants' activities. Defendants' contention would potentially be more effective if Plaintiff was denying coverage for a slip and fall or some other injury involving the car parts of the salvage yard by referring to the term waste in the pollution exclusion provision. In such a situation, even if Plaintiff attempted to stretch the terms of the Policy to deny coverage in these scenarios, as suggested by Defendants during Oral Argument, it is unlikely any trial court would recognize such a blatant bad faith interpretation of the Policy. . In light of this significant difference, Heller should not be found applicable to this case.

35

Accordingly, Defendants' argument that the pollution exclusion is illusory and therefore, void as against public policy fails.

## D. Plaintiff Does Not Have a Duty to Defendant and Indemnify the Zymblosky Defendants for Punitive Damages in the Underlying Action

An insurer has no duty to cover an insured for punitive damages if the insurance policy unambiguously precludes indemnification for punitive damages. Robson v. EMC Insurance Cos., 785 A.2d 507, 510 (Pa. Super. 2001), appeal denied, 796 A.2d 984 (2002); See also Ins. Co. v. PJP Consulting, LLC, 2012 WL 552875 (Phila. Co. 2012) (holding that the insurer was entitled to summary judgment because it has no duty to indemnify insured for punitive damages based on the clear language of the policy exclusion).

Plaintiff is correct in asserting that the Houser Defendants failed to meritoriously address their fourth question presented which asserts that Atlantic has a duty to defend and indemnify the Zymbloskys for punitive damages. Notwithstanding Defendants failure to respond to this issue, indemnification for punitive damages is clearly excluded under the Policy's plain language, and therefore, should be upheld by this Court. Based on the forgoing, Plaintiff is granted summary judgment as to Defendants' punitive damage claims.